UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>ESTES CARTER THOMPSON III | Docket No. 24-CR-10107 |

### DEFENDANT'S MOTION TO SUPPRESS

The defendant, Estes Carter Thompson, moves pursuant to the Fourth Amendment of the United States Constitution and Rule 12 of the Federal Rules of Criminal Procedure to suppress all evidence resulting from the unconstitutional seizure and search of a suitcase, iPhone, and iCloud account.

### BACKGROUND[1]

On September 2, 2023, a fourteen-year-old girl (named "Minor A" in the charging documents), her minor sibling, and her parents were passengers onboard American Airlines flight 1441, departing from Charlotte, North Carolina and landing in Boston, Massachusetts. Mr. Thompson was an American Airlines flight attendant working on the flight. The government alleges that approximately midway through the flight Minor A went to use one of the airplane lavatories. According to the government, after Minor A used the toilet, she saw a partially concealed phone attached to the toilet seat, with the camera of the phone facing towards her. The

---

[1] A more thorough accounting of the government's allegations are included in Mr. Thompson's Motion to Dismiss. For the sake of brevity, Mr. Thompson only includes here those facts that are relevant to this Motion. The facts included here, like those included in Mr. Thompson's Motion to Dismiss, are based on the charging documents and materials produced by the prosecution in discovery. Mr. Thompson does not concede that any facts or allegations are true or accurate.

1

government alleges that Mr. Thompson is the person who attached the phone to the toilet seat in an attempt to secretly record Minor A using the toilet.

When the plane landed in Boston, troopers from Massachusetts State Police (MSP) spoke with Mr. Thompson – first on the plane and then in Terminal B of Logan Airport. In those conversations, Mr. Thompson denied knowledge of the recording or attempted recording of Minor A. The government claims that at that point, Mr. Thompson gave the troopers consent to look at his phone. Mr. Thompson was subsequently taken back to the MSP Troop F Detective Unit, where he was advised of his Miranda rights and given a rights form. Mr. Thompson declined to speak further to law enforcement without an attorney present. Agents attempted to get Mr. Thompson's consent to look through his suitcase, but he declined to give it. MSP ultimately kept Mr. Thompson's phone and suitcase at the Troop barracks and Mr. Thompson left.

Seventeen days later, on September 19, 2023, FBI Task Force Officer Matthew Owens filed an application for a warrant to search Mr. Thompson's suitcase, phone, and iCloud account. The warrants were approved by Magistrate Judge Dein the same day. When FBI agents searched the suitcase, they found Mr. Thompson's passport, as well as eleven stickers that matched the stickers that had allegedly held the phone in place on the toilet seat lid. When the warrant for the phone was approved, the phone was sent to the FBI's New England Regional Computer Forensic Laboratory to be forensically imaged. The FBI subsequently determined that the phone had been reset to factory settings at 9:31 AM, on September 2, 2023, approximately 30 minutes after Minor A had allegedly used the bathroom and seen the phone attached to the toilet seat lid. Agents also determined that the phone was associated with the iCloud account etc0504@gmail.com, and that the phone had connected to "americanairlinesinflight.com" at 9:34 AM on September 2, 2023. Finally, in the iCloud account, agents identified what appeared to be four additional instances other

than that involving Minor A in which Mr. Thompson had recorded a minor using the lavatory on an aircraft. Agents also found images of a minor on an airplane (but not using the bathroom), as well as images of "child pornography" created by artificial intelligence.[2]

## ARGUMENT

After officers seized Mr. Thompson's cell phone and suitcase, they kept both as evidence. Seventeen days after they seized those effects, officers finally sought a warrant to search them, as well as an iCloud account. This Court should find that the delay between seizing the phone and suitcase and seeking warrants to search them (as well as an iCloud account) was unreasonable and that all evidence obtained as a result of searching them must be suppressed.

"[A] seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984); *Segura v. United States*, 468 U.S. 796, 812 (1984) ("[A] seizure reasonable at its inception …may become unreasonable as a result of its duration."). Thus, "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998); *see also United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) ("When officers fail to seek a search warrant, at some point the delay becomes unreasonable and is actionable under the Fourth Amendment"). There is no specific day at which the delay in seeking a warrant becomes unreasonable. *Burgard*, 675 F.3d at 1033. Rather, "courts must assess the reasonableness of a seizure by weighing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. (internal citations omitted).

---

[2] Mr. Thompson does not concede that images created by artificial intelligence constitute "child pornography" under federal law.

The reasonableness of a delay is determined in light of all the facts and circumstances and on a case-by-case basis. *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009). Several factors have been "highly relevant" in this inquiry: "first, the significance of the interference with the person's possessory interest, *see Mitchell*, 565 F.3d at 1351; second, the duration of the delay, *see United States v. Place*, 462 U.S. 696, 709 (1983); third, whether or not the person consented to the seizure, *see United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011); and fourth, the government's legitimate interest in holding the property as evidence; *see Burgard*, 675 F.3d at 1033." *United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012). Law enforcement officers' demonstrated "diligence in pursuing the investigation, and the corresponding nature and complexity of that investigation" are also relevant in the analysis. *United States v. Uu*, 293 F. Supp. 3d 1209, 1213 (D. Haw. 2017).

In one example of a delay that was unreasonably long, the Eleventh Circuit found that waiting just twenty-one days to obtain a search warrant for a seized hard drive was unlawful. *Mitchell*, 565 F.3d at 1350-53. There, law enforcement officers were investigating the defendant for possession of child pornography. *Id*. at 1348-49. Two officers went to the defendant's home to conduct a "knock and talk," during which the defendant admitted that his computer contained child pornography. *Id*. at 1349. The officers then seized the hard drive from the defendant's computer without a warrant. *Id*. Two and a half days after the hard drive was seized, one of the agents traveled out of town for a training. *Id*. Three days after he returned, and three weeks after the hard drive was initially seized, the agent submitted an application for a search warrant to a Magistrate Judge, who issued the warrant the same day. *Id*. at 1349-50.

In balancing the governmental and privacy interests at stake, the court began by noting that "computers are relied upon heavily for personal and business use." *Id*. at 1351. Because computers

4

store such a vast amount of personal information, the court found the seizure of the hard drive for that length of time "constitute[d] a significant interference with Mitchell's possessory interest." *Id*. Then, the court found "there was no compelling justification for the delay." *Id*. The court noted that at the suppression hearing, the agent who had written the search warrant application stated that he "didn't see any urgency" in submitting the warrant application and felt "there was no need to get a search warrant…until he returned back from training." *Id*. Moreover, the government never provided any justification for why the other officer who had been at Mitchell's house could not have applied for the warrant while the agent was away at the training. *Id*. at 1351-52. On these facts, the court found the delay in obtaining a warrant was unreasonable. *Id*. at 1351-53.

This case in many ways mirrors *Mitchell* and compels the same result. The seizures in both cases constituted a significant interference with the defendants' possessory interests. Cell phones, like the hard drive seized in *Mitchell*, are "relied upon heavily for personal and business use." *Mitchell*, 565 F.3d at 1351. As the Supreme Court has noted, "[m]odern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life." *Riley v. California*, 573 U.S. 373, 403 (2014) (internal citations omitted).

Furthermore, as in *Mitchell*, the law enforcement officers here have no "compelling justification" for waiting so long to seek a warrant. *See Mitchell*, 565 F.3d at 1351. Like the warrant in *Mitchell,* the affidavit here relies heavily on boilerplate language. In fact, more than half of the affidavit is boilerplate language about characteristics common to consumers of child pornography, background information concerning Apple, and the seizure of electronic equipment and data.

Other factors that courts have considered in whether a delay in seeking a warrant is unreasonable also weigh in Mr. Thompson's favor. The length of the delay is one such factor. See

5

*Place*, 462 U.S. at 709. Here, officers had Mr. Thompson's cell phone and suitcase in their possession for over two weeks before seeking a warrant to search them. Courts have found similar delays unreasonable. See, e.g., *Uu*, 293 F. Supp. 3d at 1214-17 (20-day delay in seeking search warrant of backpack unreasonable); *United States v. Dass*, 849 F.2d 414, 415-16 (9th Cir. 1988) (7 to 23-day delay in seeking search warrant after removing packages from the mail unreasonable); *United States v. Smith*, 967 F.3d 198, 205-11 (2d Cir. 2020) (31-day delay in seeking search warrant for defendant's tablet was unreasonable). The length of the delay weighs heavily in favor of a finding that the delay was unreasonable.

In sum, seizing Mr. Thompson's cell phone and suitcase and possessing them for seventeen days before seeking a warrant to search them and Mr. Thompson's iCloud account was unreasonable. Officers had no compelling reason to wait that long to seek warrants. The seizure violated Mr. Thompson's Fourth Amendment rights and the evidence obtained as a result of that seizure must be suppressed.

## CONCLUSION

For the foregoing reasons, Mr. Thompson respectfully requests that the Court suppress all evidence obtained as a result of the unlawful seizure and search of Mr. Thompson's phone, suitcase, and iCloud account.

Respectfully submitted,

*/s/ Scott Lauer*
Scott Lauer

Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
scott_lauer@fd.org

## CERTIFICATE OF SERVICE

  I, Scott Lauer, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 11, 2024.

                */s/ Scott Lauer*
                Scott Lauer