UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ESTES CARTER THOMPSON III,<br><br>Defendant | Criminal No. 24-cr-10107-JEK |

**GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS**

The defendant Estes Carter Thompson III has moved to suppress the evidence derived from searches of his iPhone, carry-on luggage, and iCloud account pursuant to federal search warrants, because he argues that law enforcement unreasonable delayed seeking those warrants after seizing the evidence. Dkt. No. 47 at 3. This argument fails. As an initial matter, law enforcement did not seize the iCloud account prior to obtaining a search warrant, so that argument fails on its face. As to the iPhone and carry-on luggage, the 11-business-day period between law enforcement's seizure of the evidence and their obtaining search warrants for it was reasonable under the circumstances, where the crime under investigation occurred on board an aircraft with witnesses scattered in many locations; where the investigation involved a collaboration between state and federal authorities; where the defendant had minimal possessory interest in the phone, since he had wiped its contents directly prior to its seizure and had already consented to law enforcement's search of it; where the defendant did not request the return of the items between the time of their seizure and the application for the search warrants; and where the delay did not prejudice the defendant. Finally, even if the delay in obtaining the warrants were unreasonable, the Court should not apply the exclusionary rule because law enforcement acted in good faith.

1

# FACTS

On September 2, 2023, while working as a flight attendant on an American Airlines flight en route from Charlotte, NC to Boston, MA, Thompson attempted to surreptitiously video-record a 14-year-old female passenger, Minor A, as she used the lavatory and thereby exposed her genitalia and buttocks. Specifically, while Minor A was waiting to use the main cabin lavatory, Thompson approached and told her that she could use the first-class lavatory, and escorted her to the front of the plane so that she could do so. He then told her that he needed to wash his hands before she entered; he also told her that the lavatory's toilet seat was broken and that it would be fixed when flight 1441 returned to Charlotte. He then went into the lavatory for a period of time, then exited, and allowed Minor A to enter. Affidavit in Support of Search Warrants 23-MJ-5465 through -5467-JGD ("SW Aff.") ¶ 8(a).

When she entered the lavatory, Minor A observed red stickers on the underside of the toilet seat lid, which was in the open position. She proceeded to partially undress, removing or pulling down her shorts and underwear in order to utilize the toilet. When Minor A was done, she stood up, dressed, and turned to flush the toilet. When she turned, Minor A then noticed that an iPhone was protruding out from underneath the red stickers. The flash of the iPhone was now constantly illuminated. This caused Minor A to notice the iPhone protruding out, whereas she had not noticed it previously. Minor A looked closely at the portion of the iPhone not covered by the stickers. She could see that the iPhone or its case was dark in color and textured. Minor A also noticed a white dot on the phone or case near the illuminated flash. Minor A used her phone to take a picture of the red stickers and concealed iPhone in order to show it and report what happened to her parents. SW Aff. ¶¶ 8(b), 8(c).

When Minor A exited the lavatory, she noticed that Thompson immediately entered the lavatory. Minor A returned to her seat and told her mother what had happened, showing her mother the picture. When her mother understood what had happened, the mother got up to check out the first-class lavatory; when she was able to get in, the stickers and iPhone were no longer there. The mother reported the incident to the first-class flight attendant ("FA1"). SW Aff. ¶¶ 8(d), 12.

Minor A later described the flight attendant who had directed her to the bathroom as a white male with brown hair and a beard, which accurately described Thompson's appearance at the time. Minor A also told investigators that the flight attendant in question was the only male flight attendant onboard flight 1441, which other witnesses and the airline later confirmed Thompson was. SW Aff. ¶¶ 8(e), 10, 19.

FBI later interviewed witnesses in the first-class cabin. One witness stated that he had used the first-class lavatory early in the flight and there were no red stickers affixed to the underside of the toilet seat lid at that time, and the toilet and/or seat functioned normally. That witness saw Thompson tell Minor A to wait a minute before she used the first-class lavatory as he needed to wash his hands. Another witness saw Thompson enter the lavatory directly before and directly after Minor A; two witnesses observed that when Thompson entered the lavatory directly after Minor A, he cut off another first-class passenger in order to do so. SW Aff. ¶¶ 10, 11.

After alerting FA1, Minor A's mother also told Minor A's father what had happened. Minor A's father then engaged Thompson directly and demanded to see his phone. He saw the color drain out of Thompson's face, but Thompson responded that he did not know what Minor A's father was talking about. After Minor A's father again demanded to see Thompson's phone,

Thompson accessed an overhead bin near his flight attendant jump seat and removed his iPhone from his suitcase. Minor A's father could see that Thompson appeared to have unlocked his iPhone and was scrolling through it. Finding Thompson's actions suspicious, Minor A's father rushed towards Thompson and grabbed the iPhone from his hands. He attempted to view the contents of Thompson's iPhone but it had locked. Thompson unlocked the iPhone in front of the group and scrolled through what appeared to be folders. Minor A's father took the iPhone from Thompson again and handed it to Flight Attendant 2 ("FA2"). SW Aff. ¶¶ 12, 17-20.

FA2 told law enforcement that after Minor A's father handed Thompson's iPhone to FA2, she opened the photograph application. She observed content in the application but was unable to determine what the displayed images were. FA2 was nervous while she attempted to look at the photos because Minor A's father was angry and she found it hard to navigate someone else's phone. Thompson then said, "See… There's nothing there." He then took his iPhone from FA2. FA2 told Minor A's father that she would notify the Captain of the situation and Minor A's father returned to his seat. FA1 and FA2 notified the Captain of the situation, and law enforcement on the ground was notified. FA2 then returned to the main cabin to resume her duties, and FA1 went back to her duties in the first-class cabin. SW Aff. ¶¶ 23, 24.

A little later, Thompson darted into the lavatory and locked himself inside. Thompson remained in the lavatory for three to five minutes. When he exited the lavatory flight 1441 was beginning its descent and Thompson returned to the main cabin. SW Aff. ¶ 25.

When the flight landed, MSP spoke to Minor A and her family on the jet bridge and, separately, to Thompson. Thompson denied knowledge of the recording or attempted recording of Minor A in the first-class lavatory. Thompson was asked by an MSP Trooper if they could look at his phone. Thompson removed his iPhone from his pocket. He granted consent, unlocked

his iPhone, and handed it to the Trooper. Thompson remarked that his iPhone was new and that he had obtained it only the day before. The Trooper observed that Thompson's iPhone appeared to be in a used condition. When the Trooper looked in Thompson's iPhone, the call log appeared empty, there appeared to be no text messages and there appeared to be no photos or videos on the iPhone, indicating that photos or videos may have been deleted since FA2 had seen them in the iPhone and the device may have been restored to factory settings. Thompson's iPhone did, however, appear to be actively linked to an Apple account with Apple ID XXXXXXX@gmail.com [1] (Thompson's iCloud account) and displayed the name "Estes Carter Thompson III." Thompson's iPhone was noted to be an iPhone 12 Pro. SW Aff. ¶ 28.

Thompson, his iPhone and his carry-on luggage were detained pending additional investigation and brought to the MSP barracks at Logan Airport. When Thompson was asked to speak with FBI and MSP investigators about the incident, he declined to do so without an attorney present. Thompson was not arrested that day, but FBI retained custody of his phone and carry-on luggage. SW Aff. ¶ 29.

Thereafter, FBI continued the investigation, including interviewing passenger witnesses. *See, e.g.,* SW Aff. ¶ 9-11. Seventeen days (comprising only 11 business days) after the iPhone and suitcase were seized, on September 19, 2023, FBI obtained search warrants for them. *See* 23-MJ-5465-JGD; 23-MJ-5466-JGD. The same day, FBI also obtained a search warrant for Thompson's iCloud account, which it had asked Apple to preserve on September 2, 2023, the date of the incident involving Minor A. *See* 23-MJ-5467-JGD.

Pursuant to search warrant 23-MJ-5466, the FBI searched Thompson's suitcase on September 20, 2023. Eleven "INOPERATIVE CATERING EQUIPMENT" stickers, of the type

---

[1] A redacted version of the username for Thompson's iCloud account is used throughout this filing. The username includes Thompson's initials and a portion of his birthdate.

5

observed by Minor A on the back of the toilet seat on board the flight on September 2, 2023 were located inside the suitcase and seized. Thompson's United States passport was also located in the suitcase, as were numerous carbon-copies of American Airlines forms pertaining to unaccompanied minors. Complaint Affidavit ("C. Aff.") ¶ 23.

Pursuant to search warrant 23-MJ-5465, Thompson's iPhone was examined forensically. It was determined that Thompson's iPhone had been reset to factory settings at 9:31:30 AM ET, on September 2, 2023, such that no images or files remained on his phone. Thompson's iPhone, utilizing Apple ID XXXXXXX@gmail.com (Thompson's iCloud account), connected to "americanairlinesinflight.com" at 9:34:55 AM ET on September 2 – approximately 30 minutes after Minor A took the photograph of the iPhone attached to the back of the toilet seat, shortly before the plane's arrival at Boston. Thompson's iPhone was determined to be assigned a telephone number ending in -3282, which Thompson had provided to MSP as his telephone number. C. Aff. ¶ 24; SW Aff. ¶ 28.

FBI ultimately obtained two search warrants for Thompson's iCloud account.[2] Information provided by Apple indicated that Thompson was the registered owner of the iCloud account since at least 2013 and that Thompson's iPhone 12 Pro was registered to his iCloud account on September 21, 2021. Approximately 7 minutes after Thompson's iPhone was factory reset on September 2, 2023, activities consistent with reconnecting a reset iPhone to an iCloud account commenced and continued for approximately 10 minutes. The Internet Protocol (IP) addresses associated with this activity resolve to Viasat Inc., an internet service provider that provides satellite internet service onboard certain American Airlines flights. C. Aff. ¶¶ 25, 26.

---

[2] The first one, 23-MJ-5467, issued September 19, 2023, authorized the review of contents of the account back to March 1, 2023. The second one, 23-MJ-5555, issued November 16, 2023, after incriminating evidence was found in the first search, removed date limitations on the review.

Agents identified within Thompson's iCloud account four additional instances other than that involving Minor A [3] in which Thompson recorded a minor using the lavatory on an aircraft, described below. Thompson possessed those recordings – which, as explained in the Opposition to the Motion to Dismiss, also filed today, constitute child pornography – in his iCloud account on September 2, 2023.[4]  C. Aff. ¶ 27.

## ARGUMENT

Defendant's arguments as to search of Thompson's phone and carry-on luggage are inapplicable to the search of the iCloud account, which was not seized until after the search warrant issued; accordingly, the evidence found within the iCloud account should not be suppressed. Moreover, the seventeen-day period of time between the seizure of Thompson's phone and carry-on luggage and the application for the search warrants for those items was reasonable and did not violate the Fourth Amendment; accordingly, the evidence found within them should not be suppressed. Finally, law enforcement acted in good faith reliance on facially valid search warrants with respect to all of the challenged evidence, such that this Court should not apply the exclusionary rule. Accordingly, this Court should deny the Defendant's motion to suppress.

---

[3] Consistent with the evidence that Thompson had wiped his phone after the confrontation with Minor A's father, agents did not locate a video of Minor A using the lavatory in Thompson's iCloud account.

[4] Thompson also possessed an additional 50 images of a sixth child (Minor F, YOB 2013), who was traveling as an unaccompanied minor; these images include the child sleeping and include images focused on the child's clothed buttocks as she de-planed. AA records confirm Thompson was working as a flight attendant on board American Airlines flight 1977 flying from Charlotte, North Carolina, to San Antonio, Texas, when the images were created. AA records confirm Minor F was on board that flight, and Minor F's mother identified her and her clothing in the images. C. Aff. ¶ 46. Although these images do not constitute child pornography, the government would seek to introduce them at trial as further evidence of Thompson's sexual interest in children.

## I. Defendant's Suppression Argument Is Inapplicable to the iCloud Account

As an initial matter, the defendant's argument that evidence should be suppressed because law enforcement did not apply for a search warrant within a reasonable time of the seizure is inapplicable to either of the iCloud account search warrants. The iCloud account evidence was not seized until the warrant was issued. On September 2, 2023, the day of the incident involving Minor A, law enforcement issued a preservation request to Apple, such that Apple was on notice to preserve the account. SW Aff. ¶ 28 n. 9. But Apple did not give law enforcement access to any data from that account until the search warrant was issued. Accordingly, defendant's arguments about an unreasonable delay between seizure of evidence and seeking a warrant for that evidence do not apply to the iCloud account, and the contents of the iCloud account should not be suppressed.

## II. Agents Obtained Search Warrants Within a Reasonable Time

As to the remaining challenged searches, agents' obtaining search warrants for Thompson's iPhone and carry-on luggage within 17 days – comprising only 11 business days – after initially seizing them was reasonable under the circumstances. In evaluating whether delay in seeking a search warrant is reasonable, courts in this District have noted that the "reasonableness of the delay is determined 'in light of all the facts and circumstances,' and 'on a case-by-case basis.'" *United States v. Jones*, No. 23-CR-10125-ADB, 2024 U.S. Dist. LEXIS 191625, at *3 (D. Mass. Oct. 22, 2024) (slip op.) (quoting *United States v. Mitchell,* 565 F.3d 1347, 1351 (11th Cir. 2009)).

Courts in this District have considered various factors instructive in determining whether a particular period of delay is reasonable, including: the length of the delay; the importance of the seized property to the defendant; the importance of the governmental interests alleged to

justify the intrusion; and the strength of the state's justification for the delay. *See Jones,* 2024 U.S. Dist. LEXIS 191625, at *9 (citing *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020)); *United States v. Berroa*, No. 19-CR-10164-ADB, 2021 WL 149254, at *6 (D. Mass. Jan. 15, 2021) (same); *United States v. Blanchard*, 544 F. Supp. 3d 166, 171-72 (D. Mass. 2021) (Zobel, J.). (citing *United States v. Burgard,* 675 F.3d 1029, 1033 (7th Cir. 2012)). Analysis of these factors demonstrates that the delay in seeking warrants for the iPhone and carry-on luggage was reasonable.

### A. The Length of the Delay

Seventeen days is well within the period of time courts in this District have found to be reasonable to seek a warrant. Indeed, on at least three occasions, courts in this District have found that a delay of approximately four months in obtaining a search warrant for a seized cell phone was reasonable. *See Jones*, 2024 U.S. Dist. LEXIS 191625 at *22 (four months reasonable); *United States v. Kormah*, No. 21-CR-40012-TSH, 2023 U.S. Dist. LEXIS 15860, at *11 (D. Mass. Feb. 1, 2023) (four months reasonable and "somewhat in the middle of those delays which other courts have found reasonable versus unreasonable"); *Blanchard*, 544 F. Supp. 3d at 172 (approx. four months reasonable).

Defendant's reliance on four out-of-circuit cases to argue otherwise is misplaced. *See Mitchell,* 565 F.3d at 1350-53 (21-day delay in obtaining search warrant for seized hard drive unreasonable); *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988) (finding delay of seven to 23 days unreasonable to seek a warrant to search postal packages, after a dog sniff alerted law enforcement to the presence of contraband); *Smith*, 967 F.3d at 202 (31-day delay in seeking search warrant for tablet unreasonable); *United States v. Uu*, 293 F. Supp. 3d 1209, 1211 (D. Haw. 2017) (20-day delay in seeking search warrant of backpack unreasonable). As an initial

matter, those cases are inconsistent with precedent in this Court. Second, in almost all of those cases, the period of time found to be unreasonable was a *longer* period of time than the 17-day period here. Third, *Mitchell* and *Smith* concern electronic devices that had data on them, whereas Thompson's phone had been wiped, and all parties were aware of that prior to the search. Finally, the court in *Jones*, 2024 WL 4542929 at *4, distinguished these cases, where the "contents of the phones or containers at issue were needed to discern whether there was a basis for a criminal charge," from cases where there was probable cause that a crime had occurred separate from the searches. Here, even prior to the searches, there was probable cause that Thompson had recorded or attempted to record Minor A using the lavatory, and thus violated 18 U.S.C. § 2251(e).

Accordingly, the seventeen-day delay in this case is significantly shorter than what has been deemed reasonable by applicable case law and factors against suppression.

### B. The Defendant's Limited Interest in the Phone and Luggage

Moreover, the defendant had very limited property and possessory interests in the iPhone and carry-on luggage. Relevant factors for evaluating the defendant's interest in the phone include the "Defendant's relationship to the phone, for example the extent to which the phone contains business or personal information, and the efforts that Defendant made to obtain its return." *Berroa*, 2021 WL 149254, at *4. Cellphones with substantial personal information are protected to a greater extent. *Id.* ("[I]n this day and age, a phone may contain virtually all of an individual's personal information, including contacts, emails, texts, banking information, photographs, and a host of other data that make the contents of a phone deeply personal."). Phones "without any personal information whatsoever" that are merely a criminal "business

10

tool" are deemed to have diminished importance to a defendant. *Id.; Jones,* 2024 U.S. Dist. LEXIS 191625 at *5.

On the date of seizure, the Defendant falsely stated to a Massachusetts State Trooper that he had purchased his iPhone the day before; in fact, evidence indicates that the phone had been restored to factory settings or "wiped" after the incident involving Minor A. SW Aff. ¶ 28; C. Aff. ¶¶ 24, 26. Thompson consented to a search of his phone, and when the Trooper thereafter inspected the phone, he found that the phone contained no images or videos, call log, text messages, or other personal information, although he noted that it was linked to the Defendant's iCloud account. SW Aff. at ¶ 28. Thus, the Defendant's phone was "without any personal information whatsoever." *Jones*, 2024 U.S. Dist. LEXIS 191625 at *5. Additionally, the Defendant did not make any effort to obtain the iPhone's return and had already consented to a search of the phone. Thus, the Defendant had minimal property, possessory, or privacy interest in the iPhone.

Likewise, the Defendant had limited interest in the carry-on luggage. He was working as a flight attendant, and thus would only have in his luggage items that he needed for the work day or potentially an overnight stay. As with the iPhone, he did not make any effort to secure its return between seizure and the time the warrant was sought.

### C. Government's Interest in the iPhone and Luggage

The government had a strong interest in the evidence contained in Thompson's iPhone and luggage. There was probable cause that the iPhone was used in the exploitation or attempted sexual exploitation of Minor A in the airplane bathroom. There was probable cause to believe that the luggage that Thompson had carried onto the plane with him and accessed during the flight contained additional evidence, potentially including additional electronic devices. And in

fact, the search of the phone confirmed that Thompson had wiped the phone directly after the incident involving Minor A and then had re-connected to his iCloud account; and the luggage contained, among other items, the same sort of stickers that had been used to attach the iPhone to the back of the lavatory toilet. The government has a strong interest in presenting this evidence.

### D. Justification for the Delay

The government's seventeen-day delay in obtaining a search warrant was justified. The complexity of an investigation is a factor that this Court considers. *Jones*, 2024 WL 4542929 at *6. Additionally, delays inherent in collaboration or transition from state to federal investigation and prosecution can also justify delay. *Id.*; *see also Blanchard*, 544 F. Supp. 3d at 172 (listing "transfer of the case from the state to the federal authorities" as one reason the four-month delay was reasonable).

Here, the incident occurred on the Saturday of Labor Day Weekend. *See* https://www.timeanddate.com/date/weekday.html?day=2&month=9&year=2023 (last accessed Nov. 6, 2024). Accordingly, the "17-day" delay actually represented only 11 business days. The investigation involved both state and federal authorities, the Massachusetts State Police and the FBI. Given the fact that the witnesses were all airline passengers and/or flight crew, who lived in various locations and were traveling on the date of the incident, 11 business days was not an unreasonable period in which to interview witnesses (*see, e.g.,* SW Aff. ¶¶ 9-11) and assemble the statement of probable cause for the magistrate judge, which was not an assembly of boilerplate, as in *Mitchell,* but rather included a detailed, 13-page factual account of the investigation to date.

### E. Absence of Prejudice to the Defendant from the Delay

Finally, the delay did not prejudice the defendant. He was not in custody at the time so, if anything, it lengthened the period of time before he was charged and taken into custody. He has not argued any prejudice from the delay.

### III. The Exclusionary Rule Does Not Apply Because a Reasonable Law Enforcement Officer Would Believe That the Warrants Were Timely Obtained

Even assuming *arguendo* that an unreasonable amount of time had passed before the government sought warrants, the exclusionary rule should not apply because law enforcement acted in good faith; there is no police misconduct to deter here. "The fact that a Fourth Amendment violation occurred—*i.e.*, that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *Illinois v. Gates,* 462 U.S. 213, 223 (1983)). The purpose of the exclusionary rule is to deter future Fourth Amendment violations, not to remedy past ones. *Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). The Supreme Court has emphasized that "the exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'" *Herring*, 555 U.S. at 141 (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). It is a "last resort, not our first impulse." *Herring,* 555 U.S. at 141 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). Because suppression imposes a "costly toll upon truth-seeking and law enforcement objectives" by "letting guilty and possibly dangerous defendants go free," a court must find that "the benefits of deterrence . . . outweigh the costs" before excluding evidence obtained in violation of the Fourth Amendment. *Id.* (quotation marks omitted); *Davis*, 131 S. Ct. at 2427 ("For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs. . . . Our cases hold that society must swallow this bitter pill when necessary, but only as a 'last resort.'").

"To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. Suppression may therefore be warranted "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*; *Davis*, 131 S. Ct. at 2427. "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 131 S. Ct. at 2427-2428 (internal citations and quotation marks omitted).

Here, a reasonably well-trained officer would have a good faith belief that they could lawfully seize Thompson's iPhone and overnight luggage and apply for a warrant within 17 days. Indeed, a court in the District of Massachusetts has found that reasonably well-trained law enforcement officers would have no reason to know that a *fifteen-month* delay in obtaining a search warrant for a cell phone was unreasonable. *See Berroa*, No. 19-cr-10164-ADB, 2021 WL 149254 at *6; *see also see Smith*, 967 F.3d at 212-13 (declining to suppress evidence after a month-long delay in obtaining a warrant, and noting that because "the constitutional reasonableness of delay depends on the assessment and balancing of multiple factors . . .this is not an area of Fourth Amendment law that has reduced itself to bright-line rules). Indeed, as the Second Circuit in *Smith* noted, in some cases courts have held a one-month delay is too long, whereas in other cases courts have upheld delays of "even much longer duration." *Id.* at 212.

An objectively reasonable officer would not have known that the Fourth Amendment was violated by applying for search warrants within 17 days of seizure of items for which they had probable cause to believe contained evidence of crimes – particularly after a neutral magistrate,

14

knowing all of the relevant facts, issued the warrants. Accordingly, exclusion of the evidence is not appropriate.

## **CONCLUSION**

Thompson has not asserted any factually accurate grounds for the suppression of the iCloud account, so his motion as to that evidence must be denied. As to the remaining evidence, agents sought search warrants for Thompson's iPhone and carry-on luggage within a reasonable period of time. Moreover, if there was any constitutional deficiency in the timing of the searches, because it was not the result of "deliberate, reckless, or grossly negligent conduct," the exclusionary rule should not be applied. Accordingly, the defendant's Motion to Suppress should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorney,

JOSHUA S. LEVY
Acting United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

Dated: November 8, 2024

## **CERTIFICATE OF SERVICE**

  Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

               */s/ Elianna J. Nuzum*
               Elianna J. Nuzum
               Assistant United States Attorney

Dated: November 8, 2024