UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

ESTES CARTER THOMPSON III,

        Defendant

Criminal No. 24-cr-10107-JEK

## **GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

Defendant's Motion to Dismiss (Dkt. No. 48) ("Motion") should be denied, as each of his arguments for dismissal falls short. The Indictment adequately alleges the charged offenses, and the Indictment, Complaint Affidavit, and other materials provided in discovery collectively have put the defendant on notice of the basis for the charges against him, such that there is no need for a bill of particulars. Venue is proper because offenses occurring on aircraft are continuing offenses for which venue is proper in the landing jurisdiction; moreover, for Count Two, there is independent venue in the District of Massachusetts because the defendant at least constructively possessed the child pornography while he was on the ground in Boston and in possession of his iPhone, which was signed into the iCloud account in which he stored the child pornography. Finally, Defendant's argument that a depiction of a child using the bathroom cannot be a lascivious exhibition as a matter of law is contrary to First Circuit precedent, as well as every other Circuit to address the issue except the D.C. Circuit; whether there is a lascivious exhibition is a matter for the jury to decide at trial. Accordingly, the defendant's Motion should be denied.

## FACTS[1]

On September 2, 2023, while working as a flight attendant on an American Airlines flight en route from Charlotte, NC to Boston, MA, Thompson attempted to surreptitiously video-record a 14-year-old female passenger, Minor A, as she used the lavatory and thereby exposed her genitalia and buttocks. Specifically, while Minor A was waiting to use the main cabin lavatory, Thompson approached and told her that she could use the first-class lavatory, and escorted her to the front of the plane so that she could do so. He then told her that he needed to wash his hands before she entered; he also told her that the lavatory's toilet seat was broken and that it would be fixed when flight 1441 returned to Charlotte. He then went into the lavatory for a period of time, then exited, and allowed Minor A to enter. Affidavit in Support of Criminal Complaint, Dkt. No. 4-1 ("C. Aff.") ¶ 7(a).

When she entered the lavatory, Minor A observed red stickers on the underside of the toilet seat lid, which was in the open position. She proceeded to partially undress, removing or pulling down her shorts and underwear in order to utilize the toilet. When Minor A was done, she stood up, dressed, and turned to flush the toilet. When she turned, Minor A then noticed that an iPhone was protruding out from underneath the red stickers. The flash of the iPhone was now constantly illuminated. This caused Minor A to notice the iPhone protruding out, whereas she had not noticed it previously. Minor A looked closely at the portion of the iPhone not covered by the stickers. She could see that the iPhone or its case was dark in color and textured. Minor A also noticed a white dot on the phone or case near the illuminated flash. Minor A used her phone

---

[1] Below is a summary of the facts alleged in the Complaint. For purposes of deciding a Motion to Dismiss, facts in the charging document(s) are accepted as true. *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015).

to take a picture of the red stickers and concealed iPhone in order to show it and report what happened to her parents. C. Aff. ¶¶ 7(b)-(c).

When Minor A exited the lavatory, she noticed that Thompson immediately entered the lavatory. Minor A returned to her seat and told her mother what had happened, showing her mother the picture. C. Aff. ¶ 7(d). When her mother understood what had happened, the mother got up to check out the first-class lavatory; when she was able to get in, the stickers and iPhone were no longer there. The mother reported the incident to the first-class flight attendant ("FA1"). C. Aff. ¶¶ 13-14.

Minor A later described the flight attendant who had directed her to the bathroom as a white male with brown hair and a beard, which accurately described Thompson's appearance at the time. Minor A also told investigators that the flight attendant in question was the only male flight attendant onboard flight 1441, which other witnesses and the airline later confirmed Thompson was. C. Aff. ¶ 7(e).

FBI later interviewed witnesses in the first-class cabin. One witness stated that he had used the first-class lavatory early in the flight and there were no red stickers affixed to the underside of the toilet seat lid at that time, and the toilet and/or seat functioned normally. That witness saw Thompson tell Minor A to wait a minute before she used the first-class lavatory as he needed to wash his hands. Another witness saw Thompson enter the lavatory directly before and directly after Minor A; two witnesses observed that when Thompson entered the lavatory directly after Minor A, he cut off another first-class passenger in order to do so. C. Aff. ¶¶ 8-12.

After alerting FA1, Minor A's mother also told Minor A's father what had happened. Minor A's father then engaged Thompson directly and demanded to see his phone. He saw the color drain out of Thompson's face, but Thompson responded that he did not know what Minor

A's father was talking about. After Minor A's father again demanded to see Thompson's phone, Thompson accessed an overhead bin near his flight attendant jump seat and removed his iPhone from his luggage. Minor A's father could see that Thompson appeared to have unlocked his iPhone and was scrolling through it. Finding Thompson's actions suspicious, Minor A's father rushed towards Thompson and grabbed the iPhone from his hands. He attempted to view the contents of Thompson's iPhone but it had locked. Thompson unlocked the iPhone in front of the group and scrolled through what appeared to be folders. Minor A's father took the iPhone from Thompson again and handed it to Flight Attendant 2 ("FA2"). C. Aff. ¶¶ 15-17.

FA2 told law enforcement that after Minor A's father handed Thompson's iPhone to FA2, she opened the photograph application. She observed content in the application but was unable to determine what the displayed images were. FA2 was nervous while she attempted to look at the photos because Minor A's father was angry and she found it hard to navigate someone else's phone. Thompson then said, "See… There's nothing there." He then took his iPhone from FA2. FA2 told Minor A's father that she would notify the Captain of the situation and Minor A's father returned to his seat. FA1 and FA2 notified the Captain of the situation, and law enforcement on the ground was notified. FA2 then returned to the main cabin to resume her duties, and FA1 went back to her duties in the first-class cabin. C. Aff. ¶¶ 18-19.

A little later, Thompson darted into the lavatory and locked himself inside. Thompson remained in the lavatory for three to five minutes. When he exited the lavatory flight 1441 was beginning its descent and Thompson returned to the main cabin. C. Aff. ¶ 20.

When the flight landed, MSP spoke to Minor A and her family on the jet bridge and, separately, to Thompson. Thompson denied knowledge of the recording or attempted recording of Minor A in the first-class lavatory. Thompson was asked by an MSP Trooper if they could

look at his phone. Thompson removed his iPhone from his pocket. He granted consent, unlocked his iPhone, and handed it to the Trooper. Thompson remarked that his iPhone was new and that he had obtained it only the day before. The Trooper observed that Thompson's iPhone appeared to be in a used condition. When the Trooper looked in Thompson's iPhone, the call log appeared empty, there appeared to be no text messages and there appeared to be no photos or videos on the iPhone, indicating that photos or videos may have been deleted since FA2 had seen them in the iPhone and the device may have been restored to factory settings. Thompson's iPhone did, however, appear to be actively linked to an Apple account with Apple ID XXXXXXX@gmail.com[2] (Thompson's iCloud account) and displayed the name "Estes Carter Thompson III." Thompson's iPhone was noted to be an iPhone 12 Pro. C. Aff. ¶ 21.

Thompson was not arrested that day, but his iPhone and his carry-on luggage were detained, and FBI ultimately sought search warrants for them as well as for Thompson's iCloud account. C. Aff. ¶ 22; 23-MJ-5465-JGD; 23-MJ-5466-JGD; 23-MJ-5467-JGD.

The search of Thompson's carry-on luggage on September 20, 2023 revealed eleven "INOPERATIVE CATERING EQUIPMENT" stickers, of the type observed by Minor A on the back of the toilet seat on board the flight on September 2, 2023 were located inside the luggage and seized. Thompson's United States passport was also located in the luggage, as were numerous carbon-copies of American Airlines forms pertaining to unaccompanied minors. C. Aff. ¶ 23. Forensic examination of Thompson's iPhone revealed that it had been reset to factory settings at 9:31:30 AM ET, on September 2, 2023, such that no images or files remained on his phone. Investigation also revealed that Thompson's iPhone, utilizing Apple ID XXXXXXX@gmail.com (Thompson's iCloud account), connected to

---

[2] A redacted version of the username for Thompson's iCloud account is used throughout this filing. The username includes Thompson's initials and a portion of his birthdate.

"americanairlinesinflight.com" at 9:34:55 AM ET on September 2 – approximately 30 minutes after Minor A took the photograph of the iPhone attached to the back of the toilet seat, shortly before the plane's arrival at Boston.  C. Aff. ¶ 24.

FBI ultimately obtained two search warrants for Thompson's iCloud account. Information provided by Apple indicated that Thompson was the registered owner of the iCloud account since at least 2013 and that Thompson's iPhone 12 Pro was registered to his iCloud account on September 21, 2021.  Approximately 7 minutes after Thompson's iPhone was factory reset on September 2, 2023, activities consistent with reconnecting a reset iPhone to an iCloud account commenced and continued for approximately 10 minutes. The Internet Protocol (IP) addresses associated with this activity resolve to Viasat Inc., an internet service provider that provides satellite internet service onboard certain American Airlines flights. C. Aff. ¶¶ 25-26.

Agents identified within Thompson's iCloud account four additional instances other than that involving Minor A[3] in which Thompson recorded a minor using the lavatory on an aircraft. C. Aff. ¶ 27.  Each of these videos was focused on the child's genitalia and buttocks; some were also modified to play in slow motion.  C. Aff. ¶¶ 30, 34-35, 38-39, 43-44.  In one instance, still images depicting the child's buttocks and genitalia were created from the video.  C. Aff. ¶¶ 38-39.  In another, still images were created and merged into a montage that juxtaposed the child's genitals and her face.  C. Aff. ¶¶ 43-44.  Thompson possessed those recordings and images in his iCloud account on September 2, 2023.[4]

---

[3] Agents did not locate a video of Minor A using the lavatory in Thompson's iCloud account.

[4] Thompson also possessed an additional 50 images of a sixth child (Minor F, YOB 2013), who was traveling as an unaccompanied minor; these images include the child sleeping and include images focused on the child's clothed buttocks as she de-planed.  AA records confirm Thompson was working as a flight attendant on board American Airlines flight 1977 flying from Charlotte, North Carolina, to San Antonio, Texas, when the images were created.  AA records confirm Minor F was on board that flight, and Minor F's mother identified her and her clothing in the

On January 9, 2024, Thompson was charged by Complaint on with sexual exploitation of children and attempt, in violation of 18 U.S.C. § 2251(a) and (e), and possession of child pornography depicting a prepubescent minor, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Dkt. No. 4. On April 25, 2024, he was indicted on the same charges. Dkt. No. 19. Automatic discovery was provided on June 20, 2024, and the government made available for inspection physical and electronic evidence including the defendant's iCloud account, which defense counsel has reviewed. *See* Dkt. No. 34 ¶ 2. He has now moved to dismiss the indictment.

## ARGUMENT

### I. The Indictment Alleges the Offenses With Sufficient Particularity to Satisfy the Constitution, Rule 7, and Rule 12

#### A. The Indictment Is Sufficient

The indictment in this case charges the defendant with sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and (e) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Dkt. No. 19.

Fed. R. Crim. P. 7(c) requires the indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." "In general, an indictment is sufficiently particular 'if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense.'" *United States v. Poulin*, 588

---

images. C. Aff. ¶ 46. Although these images do not constitute child pornography, the government would seek to introduce them at trial as further evidence of Thompson's sexual interest in children. Likewise, the government would seek to introduce evidence of images of child pornography that were created through an artificial intelligence web site, based on search terms or prompts that the user, believed to be Thompson, typed in, discussed further below, as evidence of his sexual interest in children. *See* C. Aff. ¶ 47.

F. Supp. 2d 64, 66 (D. Me. 2008) (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993), and holding that a similar § 2251(a) indictment met the standard and denying a motion for a bill of particulars). The indictment here meets that basic standard.

In seeking dismissal of the indictment, the defendant acknowledges that an indictment "may allege elements using 'the words of the statute itself, [] [when], those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements…" Motion at 8, citing *Russell v. United States,* 369 U.S. 749, 765 (1962) (brackets added by defendant); and *Hamling v. United States,* 418 U.S. 87, 117 (1974). He contends, however, that an indictment may be dismissed as constitutionally insufficient when it " repeats broad generically worded statutory text without descending to specific factual allegations." Motion at 7. He relies on *Russell* and *United States v. Tomasetta,* 429 F.2d 978, 979 (1st Cir. 1970). While both of these cases held indictments to be legally insufficient, neither of them involved the statutes at issue here: *Russell* concerned the failure to answer questions when summoned before a congressional subcommittee (2 U.S.C. § 192), and *Tomasetta* concerned loansharking (18 U.S.C. § 894). Moreover, the First Circuit later recognized the fundamental defect in the *Tomasetta* indictment was the failure to identify the victim:

> The *Tomasetta* case also involved an indictment under 18 U.S.C. § 894. That indictment, unlike the one in the instant case, failed to name the alleged victim of the offense, and described in only the most general terms the location, time, and substance of the extortionate threats. This Court held that the failure to state the victim's name was fatal under the circumstances, because it did not afford the defendant enough particulars to defend the charge. However, the Court noted that it is not always fatal to omit information concerning location, type of threat, or even the name of the victim.

*United States v. Sedlak,* 720 F.2d 715, 719 (1st Cir. 1983). Here, the indictment tracks the statutory language for both counts and includes information about the victims of each, which information is further supplemented by the Affidavit in support of the Complaint. Dkt. Nos. 4,

19.  Thompson also relies on an out-of-district District Court case, *United States v. Hillie,* 227 F. Supp. 3d 57 (D.D.C. 2017), in which the Court dismissed § 2251(a) charges for an insufficient indictment; however, in that case, the indictment alleged multiple counts, and alleged that the offenses occurred within a 2-year time period, making it "impossible to discern – and therefore to distinguish between – the conduct underlying each separate count." *Id.* at 72.  Here, by contrast, there are only two counts, both alleging distinct conduct, and both alleging one particular date and location on which the conduct was committed.

At the end of the day, the indictment in this case serves the two functions an indictment must fulfill.  First, it "contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet," namely, a violation of 18 U.S.C. § 2251(a) committed against Minor A in the District of Massachusetts and elsewhere (specified in the Complaint Affidavit and in discovery to be on the airplane while traveling over the District of New Jersey) on September 2, 2023, and a violation of 18 U.S.C. § 2252A committed on or about September 2, 2023 in the District of Massachusetts and elsewhere involving prepubescent children. *See Russell,* 369 U.S. at 764 (cites and interior quote marks omitted). By specifying the date, place, victim, and crime, it also provides the defendant protection against double jeopardy. *Id.* The defendant having failed to establish otherwise, so much of the Motion as seeks dismissal of the indictment should be denied.

**B.  Because the Defendant Has Received Adequate Detail of the Charges Against Him, a Bill of Particulars Is Not Appropriate**

Moreover, the portion of the Motion seeking a bill of particulars should also be denied. "A bill of particulars is not a discovery tool and it should not be used to obtain disclosure of 'evidence, witnesses to be offered at trial, or the government's legal theories.'" *United States v. Kenney*, No. 16-CR-10182-DPW, 2016 U.S. Dist. LEXIS 166744, at *3 (D. Mass. Dec. 2, 2016)

(quoting *United States v. Stryker Biotech, LLC*, No. 09-10330-GAO, 2010 U.S. Dist. LEXIS 85399, *3 (D. Mass. Jul. 21, 2010)). Rather, its purpose "is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." *Id.* (citing *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir. 1989)). A motion for a bill of particulars should be granted only where "the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Kenney*, 2016 U.S. Dist. LEXIS 166744, at *1-2 (quoting *United States v. DeNunzio,* No. 14-10284-NMG, at *1 (D. Mass. May 29, 2015)) (citations omitted). Factors to consider when deciding a request for bill of particular include the "complexity of the charges facing a defendant, the amount of detail in the indictment, the nature of the discovery already provided to the defendants, and whether the information sought relates to matters the government will have to prove at trial." *Kenney*, 2016 U.S. Dist. LEXIS 166744, at *3 (citations omitted).

Particularly where, as here, a detailed Affidavit in support of a Criminal Complaint spells out the particulars of how each crime was committed, and discovery has been provided including inspection of the iCloud account in which the images that form the basis for the charges reside, there is no basis for ordering a bill of particulars. *See Kenney*, No. 2016 U.S. Dist. LEXIS 166744, at *1-2 (denying motion for bill of particulars because, "when the indictment is viewed in conjunction with additional information that has been provided to the defendant, including the underlying complaint affidavit, and information provided by the government in open court identifying the conduct alleged to constitute a violation of the statute, . . . the defendant has ample information to allow her to understand and defend against the charged offense"); *United States v. Martinez*, No. 11-10195-RWZ, 2012 U.S. Dist. LEXIS 35079, at *6 (D. Mass. Mar. 15, 2012) (denying motion for bill of particulars where, "[g]iven the indictment, the criminal

complaint affidavit and all the discovery that has been produced in this case, [defendant] is not lacking 'a fair opportunity to prepare a defense absent a bill of particulars'") (quoting *United States v. Nelson-Rodriguez*, 319 F. 3d 12, 31 (1st Cir. 2003)).  This Court (Saylor, J.) denied a motion to dismiss or in the alternative for bill of particulars making a nearly identical argument in 2022 (*United States v. Coleman*, No. 19-cr-10113-FDS, Dkt. No. 212).

For all these reasons, defendant's motion to dismiss or in the alternative require a bill of particulars in this matter should be denied.

## II.    Venue Is Proper in the District of Massachusetts for Both Counts

Venue is proper in the District of Massachusetts for both counts in the Indictment, because the charges in the instant case are "continuing offenses" for which venue is proper in the flight destination state. *United States v. Lozoya*, 982 F.3d 648, 652 (9th Cir. 2020) (*en banc*) (holding that any offense committed on airplane is a continuing offense, which can be charged in the landing district).   Furthermore, as to Count Two, the defendant constructively possessed the child pornography stored in his iCloud account while he was on the ground in the District of Massachusetts and his phone was logged in to that iCloud account. Maintaining the "power and intent" to access child pornography within a particular district is sufficient to venue the case there, even without proof that the person accessed the child pornography there. *United States v. Little*, 864 F.3d 1283, 1288–89 (11th Cir. 2017).

### A.  Sexual Exploitation of a Child and Attempt (18 U.S.C. § 2251(a))

Venue is proper for Count One, charging the defendant with sexual exploitation of Minor A and attempt.  This is because violations of 18 U.S.C. § 2251 are "continuing offenses"; as such, when they occur on airplanes, they can be prosecuted in any district through which the airplane moves, including the landing district.

The second paragraph of 18 U.S.C. § 3237(a) provides that "Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." The First Circuit has held that offenses charged under 18 U.S.C. § 2251(a) are "continuing offenses." *United States v. Monroe*, 350 F. Supp. 3d 43, 47 (D.R.I. 2018), *aff'd*, No. 19-1869, 2021 WL 8567708 (1st Cir. Nov. 10, 2021) ("Offenses under 18 U.S.C. §§ 2251 and 2252 are thus widely recognized as 'continuing offenses' often occurring in more than one district."). For continuing offenses that take place on an airplane traveling interstate, venue is proper in the district in which the airplane lands. *Lozoya*, 982 F.3d at 652. Venue is proper even where, as here, the "crime was committed in the airspace above a [different] district." *Id. See also United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004) (venue for charge of abusive sexual contact with a minor, which occurred on board an airplane, deemed proper in the landing district).

In *Lozoya*, the defendant was on a flight from Minneapolis to Los Angeles when, after arguing with the man in the seat behind her, she slapped him in the face. 982 F.3d at 650. The slap occurred about halfway through the flight, at some point between one and two hours before the flight landed in Los Angeles. *Id.* The defendant was charged in the district in which the plane landed, the Central District of California. *Id.* At the close of the government's evidence in the bench trial that followed, the defendant moved for an acquittal, arguing that the government had not established venue in the Central District. *Id.* The magistrate judge, and later the district court, ruled that venue was appropriate in the landing district. The Ninth Circuit ultimately reviewed the issue *en banc* and also found that venue was appropriate. *Id.* at 657. In arriving at that conclusion,

the Court noted how air travel "has complicated the problem of establishing venue for the purposes of prosecution." *Id.* at 651. It found that venue was proper under the second paragraph of 18 U.S.C. § 3237(a) because the offense involved transportation, and because it was a "continuing offense," it continued until the plane landed. In so doing, the Court rejected the defendant's argument that the trial must be held "in the district over which the plane was flying at the exact moment of the assault." *Id.* at 652. The Court in *Lozoya* noted how applying landing district venue not only comported with the language of the statute, but also is the "near-universal practice" which is "plainly sensible" given the difficulties of establishing the precise location that crimes aboard airplanes occur, and how venue in flyover jurisdictions would be the least convenient for defendants, victims, and witnesses alike *Id.* at 654-655.

Likewise here, venue for the 18 U.S.C. § 2251(a) "continuing offense" is proper in the jurisdiction in which the plane on which it occurred landed, in the District of Massachusetts. Finding venue in a "flyover district" in which none of the victims, witnesses, or the defendant live or were traveling to on the day in question flies in the face of both the language of the venue statute as well as its purpose — "to protect the criminal defendant from 'the unfairness and hardship to which trial in an environment alien to the accused exposes him.'" *Lozoya*, 982 F.3d at 652.[5]

### B. Possession of Child Pornography and Attempt (18 U.S.C. § 2252A(a)(5)(B))

Although the same argument above would provide venue for the 18 U.S.C. § 2252A(a)(5)(B) charge in the District of Massachusetts for the child pornography in Thompson's iCloud account which he possessed and transported with him in interstate commerce, venue is even simpler for this count. In addition to possessing child pornography while in flight,

---

[5] At the time of the offense, the defendant lived in Charlotte, North Carolina. The District of New Jersey, which the parties agree is the District that the plane was likely flying over at the time that Minor A was in the first-class lavatory at the defendant's direction, would be no more convenient to the defendant, victim, or witnesses than the District of Massachusetts.

Thompson also possessed child pornography within his iCloud account, which his iPhone was signed into, while he was on the ground within the District of Massachusetts.

Regardless of whether Thompson accessed the child pornography while in the District of Massachusetts, he maintained the "power and intent" to access child pornography within Massachusetts, which is sufficient for venue to lie in the District of Massachusetts. *See Little*, 864 F.3d at 1288–89 ("Because while in Tampa [the defendant] had 'the power and intent' to access the attached images . . . the jury reasonably could find that he constructively possessed them there even though he had received them in Texas and never actually accessed them while in Tampa." (internal citations omitted)). A defendant has the power to exercise control over child pornography stored "on external servers" if he has "the power to retrieve that data, including any images, from the servers." *Little*, 864 F.3d at 1288–89.

In *Little*, the court found that the defendant had the power to retrieve child pornography while he was in Tampa, where he possessed in Tampa a smartphone device capable of accessing child pornography that was stored as an attachment to an email that he had been sent while he was in Texas. *Id.* at 1286.   Intent to exercise control can be "inferred if a defendant had exclusive possession of the place in which the contraband is found." *United States v. Woerner*, 709 F.3d 527, 536 (5th Cir. 2013) (quoting *United States v. Moreland*, 665 F.3d 137, 148–49 (5th Cir.2011)); *see also United States v. Davis*, 909 F.3d 9, 18 (1st Cir. 2018) ("[I]ntent to control . . . may be proven by circumstantial evidence.").

Likewise here, Thompson maintained the "power and intent" to access the child pornography within Massachusetts. Thompson had the power and intent to retrieve the images while he was on the ground in Boston because the phone was his (as he admitted to law enforcement), was functional, was in his possession (until he provided it to law enforcement by

consent), and was signed into his iCloud account[6] in which child pornography was stored. In addition to the email address of the iCloud account containing his initials and a portion of his birthdate, the contents of the account (including videos that he recorded and is depicted in) demonstrate that the iCloud account was his, as does the fact that he signed into his iCloud account moments after wiping his iPhone on board the plane on September 2, 2023. Accordingly, venue is proper in the District of Massachusetts.

### III. The Indictment Properly Alleges Violations of Sections 2251 and 2252A, Which Are Supported by Evidence of Lascivious Exhibition

#### A. Sexual Exploitation of Children

#### 1. The Indictment is Sufficient

Thompson's argument that Count One fails to properly allege that Thompson employed, used, persuaded, induced, enticed, or coerced Minor A to engage in sexually explicit conduct fails; in fact, the indictment alleges exactly that. *See* Indictment at 1 ("On or about September 2, 2023, in the District of Massachusetts and elsewhere, the defendant, ESTES CARTER THOMPSON III, employed, used, persuaded, induced, enticed, and coerced a minor, 'Minor A' (YOB 2009), to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, and attempted to do so. . . ."). Although the defendant seems to argue that the facts that the government will adduce at trial cannot prove that charge, that argument is not properly decided by a motion to dismiss.

---

[6] Information provided by Apple indicated that Thompson was the registered owner of the iCloud account since at least 2013 and that Thompson's iPhone 12 Pro was registered to his iCloud account on September 21, 2021. The iCloud account's "iCloud Account Services" were accessed at 13:31:15 UTC, or 9:31:15 AM EDT, on September 2, 2023, 15 seconds before the Thompson's iPhone was factory reset. C. Aff. ¶ 26.

When reviewing a motion to dismiss an indictment, the court must "take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." *Ngige*, 780 F.3d at 502 (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)). "Indeed, 'courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *Id.* (quoting *United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011)). Here, because the indictment properly alleged all elements of the sexual exploitation offense, the indictment is sufficient, and the defendant's motion should be denied.

## 2. Although Not Properly Before The Court At This Time, the Evidence Is Also Sufficient

Moreover, although this issue is not properly before the Court, the government's evidence will be sufficient to support the charge. Although, because Thompson wiped his iPhone prior to landing, law enforcement was not able to recover any video or image that he created of Minor A using the bathroom, the government has reliable evidence of what sort of imagery he created and/or attempted to create. Specifically, the other videos that he took of other minors under very similar circumstances, which law enforcement located within his iCloud account, and each of which is remarkably similar to each other in angle, view, and focal point, establish his *modus operandi*. Thompson's images and videos of children in airplane lavatories depict "lascivious exhibition of the anus, genitals, or public area" of children, and therefore depict sexually explicit conduct as defined by 18 U.S.C.A. § 2256 (2)(A)(v). The term "lascivious exhibition of the anus, genitals, or pubic area" is not defined in 18 U.S.C.A. § 2256 (2)(A)(v). "'Lascivious' is a 'commonsensical term,' and whether a given depiction is lascivious is a question of fact for the jury." *United States*

*v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006) (quoting *United States v. Wiegand*, 812 F.2d 1239, 1243(9th Cir. 1987)) (additional citations omitted).

The First Circuit disfavors pretrial determinations that an image or video is not lascivious. *See Frabizio*, 459 F.3d at 88 ("No other circuit court, as best we can tell, has ever approved the use of the *Dost* factors in a pretrial proceeding to remove the consideration of the lasciviousness of an image from a jury."). Even the recent D.C. Circuit case, *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022), cited by the Defendant, involved a post-trial determination of sufficiency. Moreover, the rule articulated in *Hillie* that "lascivious exhibition" means that the minor displayed their anus, genitalia, or pubic manner in a way connoting their desire to engage in sexual activity (*id.* at 685) has not been adopted by any other Circuit. All of the other Circuits that have addressed this issue consider the purpose for which an image or video is designed to be relevant, rejecting the more limited view of *Hillie*. *See United States v. Sanders*, 107 F.4th 234, 263 (4th Cir. 2024) (rejecting *Hillie* standard); *United States v. McCoy*, 108 F.4th 639, 643 (8th Cir. 2024) (rejecting *Hillie* standard); *United States v. Donoho*, 76 F.4th 588 (7th Cir. 2023) (finding lascivious exhibition where images depicted children sitting on the toilet and defendant placed camera in bathroom sink, at a distance); *United States v. Boam*, 69 F.4th 601 (9th Cir. 2023) (finding lascivious exhibition where images depicted nude fourteen-year-old girl in bathroom and defendant captured pictures on hidden camera); *United States v. Spoor*, 904 F.3d 141 (2nd Cir. 2018) (finding lascivious exhibition where defendant "positioned the camera beneath the sink of the bathroom so that the pubic region of a boy standing at the toilet would occupy the center of the shot"); *United States v. McCall*, 833 F.3d 560 (5th Cir. 2016) (finding lascivious exhibition where defendant surreptitiously recorded nude child in shower); *United States v. Wells*, 843 F.3d 1251 (10th Cir. 2016) (finding lascivious exhibition where defendant placed a video camera in the

bathroom, focused on video recording a child's genitals, and then edited the videos); *United States v. Holmes*, 814 F.3d 1246 (11th Cir. 2016) (finding lascivious exhibition where defendant surreptitiously recorded nude child in bathroom); *Vallier v. United States*, No. 23-1214, 2023 WL 5676909, at *3 (6th Cir. Aug. 2, 2023) (observing that the Sixth Circuit "has not adopted the narrow construction of § 2256(2)(A)(v) set forth in *Hillie*"). Indeed, as recently as 2020, the First Circuit found no plain error in the District Court's finding that evidence of surreptitiously captured videos depicting the nude genitals of an 11-year-old as she entered and exited a shower provided a sufficient factual basis for a § 2251 plea premised on "lascivious exhibition." *United States v. Goodman*, 971 F.3d 16, 19 (1st Cir. 2020) (citing positively *Holmes*, 814 F.3d at 1252 (finding that the defendant's placement of a video camera in the bathroom, his focus on video recording her genitals, and his editing of the videos were sufficient to create a lascivious exhibition and collecting similar cases).

The defendant's argument that "[a] secretly recorded video of a minor using the toilet does not, as a matter of law, depict 'sexually explicit conduct,'" Motion at 23-24, is therefore inconsistent with First Circuit precedent and must be rejected. It would be improper for the Court to attempt to itself determine at this stage whether the videos and images the defendant created and possessed constitute "lascivious exhibition" and dismiss an indictment on the basis of such a determination.

Moreover, at trial, the government's evidence will be more than sufficient to demonstrate that the videos and images Thompson created, and attempted to create, constituted "lascivious exhibition" as that has been defined by every Circuit to address it other than the D.C. Circuit. To determine whether an image constitutes "lascivious exhibition," courts within the First Circuit consider the so-called *Dost* factors to be "generally relevant." *United States v. Amirault*, 173 F.3d

28, 32 (1st Cir. 1999) ("The inquiry will always be case-specific.") (discussing *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal.1986)). The *Dost* factors are:

1) Whether the genitals or pubic area are the focal point of the image;
2) Whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity);
3) Whether the child is depicted in an unnatural pose or inappropriate attire considering her age;
4) Whether the child is fully or partially clothed, or nude;
5) Whether the image suggests sexual coyness or willingness to engage in sexual activity; and
6) Whether the image is intended or designed to elicit a sexual response in the viewer.

*Amirault*, 173 F.3d at 31 (citing *Dost*, 636 F.Supp. at 832). Here, the first, second, fourth, and sixth factors point strongly towards lascivious exhibition.

First, the victims' fully exposed genitals and pubic area are the focal point of the videos and images taken by Mr. Thompson. The camera is deliberately positioned and angled on the inside of the toilet in a manner that made the victims' genitals and anus the focal point of the videos. Still images were taken from some of these videos, depicting the victim's genitals and anus. Furthermore, at least one video was carefully edited to juxtapose the victim's face with her genitals. Second, the setting of the video could be deemed sexually suggestive.[7] An airplane bathroom is a small, confined, private area.[8] Third, the videos display the children partially undressing until their fully nude anuses and genitalia are exposed. Finally, the images are designed

---

[7] Nonsexual settings, such as airplane bathrooms, are like showers and bathtubs in that they are "frequent hosts to fantasy sexual encounters as portrayed on television and in film." *United States v. Schuster*, 706 F.3d 800, 808 (7th Cir. 2013) (quoting *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010)). Popular culture and media often portray airplane bathrooms as a location for in-flight sexual intercourse. *See* Michelle L.D. Hanlon, *Sexual Hostility A Mile High*, 28 Hastings Women's L.J. 181, 188 (2017) (discussing sexual conduct in airplane bathrooms).

[8] This Court has distinguished nudity in public places from nudity in private places for the purpose of determining whether a depiction is "lascivious." *In re Search of 10 Cyr Circle, Andover, Massachusetts 01810*, 916 F. Supp. 2d 159, 161 (D. Mass. 2013) (finding images not lascivious where they were not "taken of children in any area which would be considered private, such as a locker room or bathroom").

to elicit a sexual response in the viewer. Due to the angle at which they are recorded, they display each child bending down to use the bathroom, and in so doing unwittingly displaying their genitalia and anus to the camera. Additionally, the fact that the videos and images were edited to play at slow motion at times, and still images were taken of views of the child's genitalia and anus, demonstrates that they were designed to elicit a sexual response in the viewer. Moreover, other content in the iCloud account demonstrates that the user of that account, Thompson, was creating these images for his sexual gratification. Other content in this iCloud account includes AI-generated pornographic images that appear to depict children, containing graphic sexual search terms which reveal the user's interest in depictions of children engaged in sexual activity. *See, e.g.,* C. Aff. ¶ 47 (reciting search terms: "10 years old blonde very small breasts no tits flat chested skinny body beautiful face blue eyes pigtails huge cock inside her pussy getting fucked laying on her back."). The fact that such AI generated images are stored jointly with images and edited videos of minors in Thompson's iCloud account makes it clear that the images and videos were designed to elicit a sexual response in the viewer – Thompson – and constitute lascivious exhibition.

### B. Possession of Child Pornography

For the same reasons laid out above, the government properly alleges a violation of 18 U.S.C. § 2252A(a)(5)(B) in the Indictment and will offer sufficient evidence at the appropriate time. The government is not relying on AI-generated images to support Count Two, so it does not address defendant's argument as to AI-generated imagery here.

## CONCLUSION

For all these reasons, Defendant's Motion to Dismiss the indictment should be denied.

> Respectfully submitted,
>
> UNITED STATES OF AMERICA
> By its attorney,
>
> JOSHUA S. LEVY
> Acting United States Attorney
>
> */s/ Elianna J. Nuzum*
> Elianna J. Nuzum
> Assistant United States Attorney
> John Joseph Moakley U.S. Courthouse
> One Courthouse Way, Suite 9200
> Boston, MA 02210
> elianna.nuzum@usdoj.gov
> 617.748.3100

Dated: November 8, 2024

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

> */s/ Elianna J. Nuzum*
> Elianna J. Nuzum
> Assistant United States Attorney

Dated: November 8, 2024