UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:24-cr-10107-JEK |
| ESTES CARTER THOMPSON III, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**
**ON DEFENDANT'S MOTION TO SUPRESS**

**KOBICK, J.**

Defendant Estes Carter Thompson III has been charged in a two-count indictment with sexual exploitation and attempted exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e), and possession and attempted possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Pending before the Court is Thompson's motion to suppress the evidence derived from searches of his iPhone, suitcase, and iCloud account. He contends that the government's seventeen-day delay between seizing the iPhone and suitcase and securing warrants to search all three items amounted to a Fourth Amendment violation. The Court disagrees and concludes that the government acted reasonably under the circumstances. The delay was relatively short and justified by the government's need to interview witnesses in different locations. Thompson's limited property interest in the seized material was also outweighed by the government's interest in maintaining custody of important evidence, particularly where Thompson had wiped his iPhone of nearly all personal data, initially consented to a search of his iPhone, and did not request that law enforcement return his seized property.

## BACKGROUND

The following undisputed facts are drawn mainly from the affidavit filed in support of the criminal complaint. *See United States v. Almonte-Baez*, 857 F.3d 27, 33 & n.5 (1st Cir. 2017).

On September 2, 2023, Thompson was working as an American Airlines flight attendant on a flight from Charlotte, North Carolina to Boston, Massachusetts. ECF 4-1, ¶ 6. About halfway through the flight, a fourteen-year-old girl, "Minor A," was waiting to use the bathroom in the main cabin. *Id.* ¶¶ 6, 7(a). A male flight attendant, later identified as Thompson, approached her, told her that she could use the first-class bathroom, and escorted her there. *Id.* ¶ 7(a). He then explained that the toilet seat was broken and that he had to wash his hands in the bathroom before she could use it. *Id.* Once Thompson finished using the bathroom, Minor A entered and observed red stickers on the underside of the open lid of the toilet seat. *Id.* ¶¶ 7(a)-(b). The stickers read "INOPERATIVE CATERING EQUIPMENT" and "REMOVE FROM SERVICE," and one of the stickers bore a handwritten note stating, "SEAT BROKEN." *Id.* ¶¶ 7(a), (b), (f). Minor A removed or pulled down her shorts and underwear to use the toilet. *Id.* ¶ 7(b). When Minor A was done, she got dressed, flushed the toilet, and then noticed an iPhone that was illuminated and protruding from underneath the stickers. *Id.* ¶¶ 7(c), (f). She took a picture of the scene on her phone. *Id.* After Minor A exited, Thompson jumped in front of a waiting first-class passenger and reentered the bathroom. *Id.* ¶¶ 7(d), 11-12.

When Minor A returned to her seat, she showed her mother the photograph of the toilet seat and explained what had happened. *Id.* ¶ 7(d). Minor A's mother told a flight attendant and Minor A's father about the incident. *Id.* ¶¶ 13-15. Minor A's father approached the other three flight attendants, including Thompson, who was the only male flight attendant on board, and demanded to see Thompson's phone. *Id.* ¶¶ 7(e), 15-16. Thompson retrieved his iPhone from his suitcase in

the overhead bin and scrolled through it for ten to fifteen seconds before Minor A's father grabbed it. *Id.* ¶ 16. Once Thompson unlocked his iPhone, another flight attendant reviewed his photos app and observed content in it, but was unable to determine what was displayed in the images. *Id.* ¶¶ 17-18. She and one of the other flight attendants notified the captain about the situation, which was conveyed to law enforcement on the ground. *Id.* ¶ 19. Thompson then locked himself in the first-class bathroom for three to five minutes and exited as the flight was beginning its descent. *Id.* ¶ 20.

Troopers from the Massachusetts State Police spoke with Thompson when the plane landed. *Id.* ¶ 21. Thompson consented to an initial search of his iPhone. *Id.* One of the troopers found that Thompson's iPhone contained no photos, videos, text messages, or phone calls, and it appeared to have been restored to its factory settings. *Id.* The phone did display Thompson's name and was actively linked to an Apple iCloud account with an Apple ID email address. *Id.* Thompson was not arrested that day, but the Federal Bureau of Investigation ("FBI") kept his iPhone and suitcase in its custody pending its applications for a search warrant. *Id.* ¶ 22. The government separately asked Apple that day to preserve Thompson's iCloud account. ECF 50, at 5.

Seventeen days later, on September 19, 2023, the FBI obtained search warrants for Thompson's iPhone, suitcase, and iCloud account. ECF 4-1, ¶¶ 23-25. During that time, law enforcement officials interviewed witnesses who were travelling on the flight and lived in different locations, including airline passengers and flight crew. *Id.* ¶¶ 8-20; ECF 50, at 12. Upon executing the search warrants, officers discovered eleven red stickers in Thompson's suitcase, like the ones that Minor A had observed in the first-class bathroom. ECF 4-1, ¶ 23. Officers also confirmed that, while connected to the airplane's Wi-Fi, Thompson's iPhone had been reset to factory settings by the Apple ID linked with Thompson's iCloud account approximately thirty minutes after Minor A

took a picture of the upturned toilet seat. *Id.* ¶ 24. The search of Thompson's iCloud account revealed, among other things, recordings and pictures of four additional minors in airplane bathrooms, with their buttocks and genitalia visible. *Id.* ¶¶ 26-45. The iCloud account also contained sexually explicit images of children that appeared to have been AI generated. *Id.* ¶ 47.

On January 9, 2024, Thompson was charged by criminal complaint with two counts: sexual exploitation and attempted exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count 1), and possession and attempted possession of child pornography depicting a prepubescent minor, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Count 2). ECF 4, 6, 7. Thompson was indicted on the same charges on April 25, 2024. ECF 16, 19. On October 11, 2024, Thompson filed his motion to suppress. ECF 47. After receiving the government's opposition and Thompson's reply, the Court held a hearing on the motion on November 20, 2024. ECF 50, 55, 57.

## DISCUSSION

The Fourth Amendment protects people from "unreasonable searches and seizures" of "their persons, houses, papers, and effects," U.S. CONST. amend. IV, but "'contains no requirements about *when* the search or seizure is to occur or the *duration*,'" *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) (quoting *United States v. Gerber*, 994 F.2d 1556, 1559-60 (11th Cir. 1993)). "A temporary warrantless seizure supported by probable cause is reasonable as long as 'the police diligently obtained a warrant in a reasonable period of time.'" *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012) (quoting *Illinois v. McArthur*, 531 U.S. 326, 334 (2001)). Thus, "a seizure reasonable at its inception because [it is] based upon probable cause may become unreasonable as a result of its duration." *Segura v. United States*, 468 U.S. 796, 812 (1984).

Thompson contends that the evidence derived from searches of his iPhone, suitcase, and iCloud account must be suppressed because the government's delay of seventeen days between

4

seizing these items and obtaining search warrants was unconstitutional. The argument fails on its face as to Thompson's iCloud account, because Thompson represented in his motion to suppress that the government seized only his iPhone and suitcase on September 2, 2023. *See* ECF 47, at 3.[1] At the hearing on his motion, Thompson argued for the first time that the government's request that Apple preserve his iCloud account also amounted to a seizure. But he offered no further argument in support of that changed position and rested on his briefing, which did not advance any such argument. Under the circumstances, the argument that the government seized Thompson's iCloud account on September 2, 2023 by making a preservation request to Apple is waived. *See United States v. Leoner-Aguirre*, 939 F.3d 310, 319 (1st Cir. 2019). Because there was no delay between any seizure of Thompson's iCloud account and the issuance of the warrant to search that account, Thompson's motion to suppress is denied as to the iCloud account.

Thompson does not dispute that law enforcement officers had probable cause to seize his iPhone and suitcase after they questioned him in Boston on September 2, 2023. The reasonableness of the delay between the seizure of those items and the government's procurement of search warrants "is determined in light of all the facts and circumstances, and on a case-by-case basis." *United States v. Watson*, No. 22-13652, 2024 WL 3860113, at *4 (11th Cir. Aug. 19, 2024) (per curiam) (quotation marks omitted). While there is "no bright line past which a delay becomes

---

[1] Specifically, Thompson argued:

> After officers seized Mr. Thompson's cell phone and suitcase, they kept both as evidence. Seventeen days after they seized those effects, officers finally sought a warrant to search them, as well as an iCloud account. The Court should find that the delay between seizing the phone and suitcase and seeking warrants to search them (as well as an iCloud account) was unreasonable and that all evidence obtained as a result of searching them must be suppressed.

ECF 47, at 3.

unreasonable," courts must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). To determine if the government's delay in securing a search warrant was reasonable, courts generally look to four factors: "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *United States v. Smith*, 967 F.3d 198, 206 & n.1 (2d Cir. 2020) (collecting cases).[2]

Under this framework, the government's seventeen-day delay between the warrantless seizure of Thompson's property and the issuance of the search warrants was reasonable. The first factor favors the government because seventeen days—eleven of which were business days—is relatively short and far shorter than other instances in which courts have deemed a delay in securing a warrant reasonable. *See, e.g.*, *United States v. Bragg*, 44 F.4th 1067, 1073 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 1062 (2023) (24-day delay for a cellphone); *Laist*, 702 F.3d at 616-17 (25-day delay for a computer); *United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011) (3-month delay for computer hard drives); *Thomas v. United States*, 775 F. App'x 477, 492 (11th Cir. 2019) (33-day delay for a computer). This Court has likewise repeatedly found that even a four-month delay in obtaining a search warrant of a defendant's seized cellphone was reasonable. *See United States v. Jones*, No. 23-cv-10125-ADB, 2024 WL 4542929, at *7 (D. Mass. Oct. 22, 2024); *United States v. Kormah*, No. 21-cv-40012-TSH, 2023 WL 1490372, at *11 (D. Mass. Feb. 1, 2023); *United*

---

[2] While the First Circuit has not adopted this test, other sessions in this district have employed it. *See, e.g.*, *United States v. Jones*, No. 23-cv-10125-ADB, 2024 WL 4542929, at *4 (D. Mass. Oct. 22, 2024); *United States v. Kormah*, No. 21-cr-40012-TSH, 2023 WL 1490372, at *11 (D. Mass. Feb. 1, 2023). The Court will likewise consider these four factors, which are similar to those analyzed by Thompson and the government. *See* ECF 47, at 4; ECF 50, at 8-9.

*States v. Blanchard*, 544 F. Supp. 3d 166, 172 (D. Mass. 2021). Similarly, in nearly all of the cases Thompson cites that have found a Fourth Amendment violation, the delay exceeded seventeen days. *See Smith*, 967 F.3d at 202 (31-day delay for a tablet); *United States v. Mitchell*, 565 F.3d 1347, 1351-53 (11th Cir. 2009) (21-day delay for a computer hard drive); *United States v. Uu*, 293 F. Supp. 3d 1209, 1215-16 (D. Haw. 2017) (20-day delay for a backpack).[3] Thus, the seventeen-day delay here is not *per se* unreasonable. *See United States v. Morgan*, 713 F. App'x 829, 831 (11th Cir. 2017) (affirming denial of a motion to suppress involving a 17-day delay in securing a warrant for a seized cellphone).

Under the circumstances of this case, the second factor only marginally supports suppression. In general, as the Supreme Court has observed, "[m]odern cell phones . . . implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." *Riley v. California*, 573 U.S. 373, 393 (2014). This is because cellphones possess an "immense storage capacity" and contain "sensitive records . . . [and] a broad array of private information." *Id.* at 393-97. Here, however, the privacy concerns are minimal because Thompson and law enforcement officers knew that he had "wiped" or restored his iPhone to its factory settings at the time it was seized. ECF 4-1, ¶ 21. While the iPhone was still linked to his iCloud account, it did not contain any photos, videos, text messages, call logs, or other personal information. *Id.* Thompson also maintained a possessory interest in his suitcase, although he does not meaningfully

---

[3] These three cases are also distinguishable because "the contents of the phones or containers at issue were needed to discern whether there was a basis for a criminal charge," whereas here, the exploitation charge was "not contingent on the results of the search of the cellphon[e]." *Jones*, 2024 WL 4542929, *4. Thompson also cites *United States v. Dass*, in which the Ninth Circuit held that the seizure of appellees' mailed packages for between seven and twenty-three days before the issuance of search warrants violated the Fourth Amendment. 849 F.2d 414, 415 (9th Cir. 1988). *Dass* is inapposite, however, because law enforcement in that case, unlike here as explained below, did not act diligently to obtain warrants. *Id.*

press this interest. Further, Thompson's conduct following the seizure did not suggest that the iPhone and suitcase were important to him, because he did not request that either item be returned at any time between when the government seized those items and obtained the warrants. *See United States v. Johns*, 469 U.S. 478, 487 (1985) (defendants who "never sought return of the property" cannot have "alleged . . . that the delay in the search of the packages adversely affected legitimate interests protected by the Fourth Amendment"); *Thomas*, 775 F. App'x at 490 (collecting cases).

The third factor favors the government because Thompson's property interest in his iPhone and suitcase was reduced, given that he initially consented to a search of his iPhone and does not dispute that probable cause as to those items existed at the time of seizure. When a defendant "consent[s] to the initial seizure" or search, "courts have found that a defendant has a diminished property interest." *Smith*, 967 F.3d at 208. Law enforcement officers had probable cause on September 2, 2023 to believe, in light of the evidence and witness statements at the time, that Thompson's iPhone would bear evidence of the sexual exploitation or attempted exploitation of Minor A. ECF 4-1, ¶¶ 6-7, 21. And Thompson does not dispute that law enforcement officers had probable cause to seize his suitcase as well. The government, therefore, had a strong interest in maintaining custody of his iPhone and suitcase. *See United States v. Sykes*, 65 F.4th 867, 879 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 576 (2024) (government had stronger interest than defendant where "[t]here was probable cause to believe that the phone contained child pornography, as well as potential evidence of sex crimes against a minor" and it "was able to protect against the loss of important evidence" through custody of the phone); *Smith*, 967 F.3d at 208 (defendant's "possessory interest was diminished . . . because the police had probable cause to believe that the tablet contained child pornography"); *Place*, 462 U.S. at 701-02 ("[T]he risk of the item's

disappearance or use for its intended purpose before a warrant may be obtained [can] outweig[h] the interest in possession.").

The fourth factor similarly weighs against suppression because the government appears to have acted diligently in obtaining the search warrants. Over the course of seventeen days, law enforcement officials interviewed several witnesses located in different places, including flight crew and airline passengers, to compile the affidavit supporting the search warrant applications. ECF 4-1, ¶¶ 8-20; ECF 50, at 12. The complexity of the investigation and involvement of state and federal investigators justifies the minimal delay here. *See Jones*, 2024 WL 4542929, at *6. The fairly quick pace also distinguishes this case from *Mitchell*, upon which Thompson relies. 565 F.3d 1347. In *Mitchell*, the Eleventh Circuit held that the government's twenty-one-day delay was unreasonable because the "only reason" given for the delay was that the agent in charge "'didn't see any urgency'" in seeking a search warrant for the defendant's seized computer hard drive before he departed for a two-week training program. *Id.* at 1351-52 (citation omitted). In contrast, the investigators here apparently acted with diligence in securing witness statements across various jurisdictions to support the warrant applications, and no evidence exists that they "simply believed that there was no rush." *Id.* at 1353. Reasonableness, not perfection, is "the ultimate touchstone of the Fourth Amendment." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "Even if the government could have moved faster to obtain [the] search warrant[s]," the record indicates that it acted with the diligence required by the Fourth Amendment. *United States v. Sullivan*, 797 F.3d 623, 634 (9th Cir. 2015) (upholding 21-day delay for a laptop).

On balance, the four factors weigh against suppression. Thompson's limited possessory interest in his iPhone and suitcase is outweighed by the government's interest in maintaining custody of important evidence, where it is undisputed that law enforcement had probable cause to

9

believe, at the time of seizure, that his iPhone and suitcase would contain evidence of sexual exploitation or attempted exploitation of Minor A. Thompson also removed almost all personal data from his iPhone, and the government retained his property without objection after he initially consented to a search of his phone. The delay was, moreover, relatively short and justified by the government's need to interview witnesses across a range of locations to support its search warrant applications. Accordingly, the seventeen-day delay between the government's seizure of Thompson's iPhone and suitcase and the issuance of the search warrants was reasonable under the Fourth Amendment.

## CONCLUSION AND ORDER

For the foregoing reasons, Thompson's motion to suppress, ECF 47, is DENIED.

SO ORDERED.

Dated: December 18, 2024

/s/ Julia E. Kobick  
JULIA E. KOBICK  
UNITED STATES DISTRICT JUDGE