UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cr-10107-JEK |
| ESTES CARTER THOMPSON III, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS**

**KOBICK, J.**

Defendant Estes Carter Thompson III has been charged in a two-count indictment with sexual exploitation and attempted exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e), and possession and attempted possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). The government alleges that, while working as a flight attendant, Thompson escorted a fourteen-year-old passenger from the main cabin to a first-class bathroom of the airplane and, utilizing a cellphone that he had attached to the toilet seat lid, sought to secretly record her using the toilet. It also alleges that a subsequent search of Thompson's iCloud account uncovered videos of other minors using airplane bathrooms, as a well as sexually explicit images of children apparently created through an artificial intelligence ("AI") website.

Pending before the Court is Thompson's motion to dismiss the indictment. He contends that the indictment lacks sufficient specificity and fails to state an offense, and that venue in the

District of Massachusetts is improper. For the reasons that follow, the Court disagrees and will deny his motion to dismiss.

## BACKGROUND

The following facts, drawn from "the allegations of the indictment and the unchallenged statement of proof of the prosecutor," are "accepted as true" for purposes of the motion to dismiss. *United States v. Ferris*, 807 F.2d 269, 271 (1st Cir. 1986).

On September 2, 2023, Thompson was working as an American Airlines flight attendant on a flight from Charlotte, North Carolina to Boston, Massachusetts. ECF 4-1, ¶ 6. About halfway through the flight, a fourteen-year-old girl, "Minor A," was waiting to use the bathroom in the main cabin. *Id.* ¶¶ 6, 7(a). A male flight attendant, later identified as Thompson, approached her, told her that she could use the first-class bathroom, and escorted her there. *Id.* ¶ 7(a). He then explained that the toilet seat was broken and that he had to wash his hands in the bathroom before she could use it. *Id.* Once Thompson finished using the bathroom, Minor A entered and observed red stickers on the underside of the open lid of the toilet seat. *Id.* ¶¶ 7(a)-(b). The stickers read "INOPERATIVE CATERING EQUIPMENT" and "REMOVE FROM SERVICE," and one of the stickers bore a handwritten note stating, "SEAT BROKEN." *Id.* ¶¶ 7(a), (b), (f). Minor A removed or pulled down her shorts and underwear to use the toilet. *Id.* ¶ 7(b). When Minor A was done, she got dressed, flushed the toilet, and then noticed an iPhone that was illuminated and protruding from underneath the stickers. *Id.* ¶¶ 7(c), (f). She took a picture of the scene on her phone. *Id.* After Minor A exited, Thompson jumped in front of a waiting first-class passenger and reentered the bathroom. *Id.* ¶¶ 7(d), 11-12.

When Minor A returned to her seat, she showed her mother the photograph of the toilet seat and explained what had happened. *Id.* ¶ 7(d). Minor A's mother told a flight attendant and

Minor A's father about the incident. *Id.* ¶¶ 13-15. Minor A's father approached the other three flight attendants, including Thompson, who was the only male flight attendant on board, and demanded to see Thompson's phone. *Id.* ¶¶ 7(e), 15-16. Thompson retrieved his iPhone from his suitcase in the overhead bin and scrolled through it for ten to fifteen seconds before Minor A's father grabbed it. *Id.* ¶ 16. Once Thompson unlocked his iPhone, another flight attendant reviewed his photos app and observed content in it, but was unable to determine what was displayed in the images. *Id.* ¶¶ 17-18. She and one of the other flight attendants notified the captain about the situation, which was conveyed to law enforcement on the ground. *Id.* ¶ 19. Thompson then locked himself in the first-class bathroom for three to five minutes and exited as the flight was beginning its descent. *Id.* ¶ 20.

Troopers from the Massachusetts State Police spoke with Thompson when the plane landed. *Id.* ¶ 21. Thompson consented to an initial search of his iPhone. *Id.* One of the troopers found that Thompson's iPhone contained no photos, videos, text messages, or phone calls, and it appeared to have been restored to its factory settings. *Id.* The phone did display Thompson's name and was actively linked to an Apple iCloud account with an Apple ID email address. *Id.* The Federal Bureau of Investigation ("FBI") retained Thompson's iPhone and suitcase in its custody pending its applications for a search warrant. *Id.* ¶ 22.

Seventeen days later, on September 19, 2023, the FBI obtained search warrants for Thompson's iPhone, suitcase, and iCloud account. *Id.* ¶¶ 23-25. Upon executing the search warrants, officers discovered eleven red stickers in Thompson's suitcase, like the ones that Minor A had observed in the first-class bathroom. *Id.* ¶ 23. Officers also confirmed that, while connected to the airplane's Wi-Fi, Thompson's iPhone had been reset to factory settings by the Apple ID linked with Thompson's iCloud account approximately thirty minutes after Minor A took a picture

3

of the upturned toilet seat. *Id.* ¶ 24. The search of Thompson's iCloud account revealed, among other things, recordings and pictures of four additional minors in airplane bathrooms, with their buttocks and genitalia visible. *Id.* ¶¶ 26-45. The iCloud account also contained sexually explicit images of children that appeared to have been AI generated. *Id.* ¶ 47.

In January 2024, Thompson was arrested in the Western District of Virginia and charged by criminal complaint in the District of Massachusetts with two counts: sexual exploitation and attempted exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count One), and possession and attempted possession of child pornography depicting a prepubescent minor, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (Count Two). ECF 4, 6, 7. Thompson was indicted on the same charges on April 25, 2024. ECF 16, 19. On October 11, 2024, Thompson moved to dismiss the indictment. ECF 48. After receiving the government's opposition and Thompson's reply, the Court held a hearing on the motion on November 20, 2024. ECF 51, 54, 57.

## DISCUSSION

**I.      Sufficiency of the Indictment.**

Thompson contends that the indictment's lack of specificity violates Federal Rule of Criminal Procedure 7(c)(1), his Fifth Amendment protection against double jeopardy, and his Sixth Amendment right to notice of "the nature and cause of the accusation" against him. Under Rule 7(c)(1), which effectuates those constitutional protections, an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To satisfy these requirements, the indictment "need only outline 'the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense.'" *United States v.*

*Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (quoting *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011)). Instructive here, the First Circuit held in *United States v. Cameron* that a sixteen-count indictment charging child pornography-related offenses was "sufficient" because "each count of the indictment included . . . a description of the offense that tracks the language of the relevant statute, the date of the offense, the type of child pornography involved (digital images), and the means by which [the defendant] either transported (for example, by uploading to a specified Yahoo! Photos album), received, or possessed the child pornography in question." 699 F.3d 621, 635 (1st Cir. 2012).

      The indictment in this case is sufficiently specific about the two charges against Thompson. Count One describes the alleged sexual exploitation or attempted exploitation of children offense in language that tracks the language of 18 U.S.C. § 2251(a); provides the date of the offense as "[o]n or about September 2, 2023"; specifies the location of the offense as "the District of Massachusetts, and elsewhere"; and identifies the victim as "'Minor A' (YOB 2009)." ECF 19, at 1-2; *see United States v. Poulin*, 588 F. Supp. 2d 64, 66-67 (D. Me. 2008) (upholding a similar indictment charging a violation of 18 U.S.C. § 2251(a)). Thompson nonetheless maintains that Count One improperly repeats generic statutory language without any supporting factual allegations about, for example, what he did to employ, use, persuade, induce, entice, or coerce Minor A under 18 U.S.C. § 2251(a). Rule 7(c)(1) does not require such specificity. An indictment need only "'apprise the defendant of the charged offense,'" not force "'the government [to] presen[t] enough evidence to support the charge.'" *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (quoting *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012)). Count One is "legally sufficient" because it "tracks [the] statute's terms" and "gives [Thompson] adequate notice of the charg[e]" against him. *Stepanets*, 879 F.3d at 372.

5

Count Two likewise describes the possession or attempted possession of child pornography offense in language that tracks 18 U.S.C. § 2252A(a)(5)(B); identifies the date of the offense as "[o]n or about September 2, 2023"; states that the offense occurred in "Massachusetts, and elsewhere"; and explains that the offense "involved a prepubescent minor and a minor who had not attained 12 years of age." ECF 19, at 3. In Thompson's view, Count Two is insufficiently specific because it does not identify the means by which he allegedly possessed child pornography. In *Cameron*, the indictment additionally specified that the defendant possessed "digital images" in a "Yahoo! Photos album." 699 F.3d at 635. But *Cameron* held that these details were "sufficient," not *necessary*, to apprise the defendant of the nature of the charge pending against him. *See id.* Nor, contrary to Thompson's argument, does Rule 7(c)(1) require the indictment to identify the specific images of child pornography he allegedly possessed or attempted to possess. *See id.* (rejecting the argument that Rule 7(c)(1) "requires such specificity" about "the specific images that [the] offense was based on"). Count Two, like Count One, provides Thompson with adequate notice of the time, place, and manner of the charged offense, such that he "'can prepare a defense and plead double jeopardy in any future prosecution for the same offense.'" *United States v. Rodríguez-Rivera*, 918 F.3d 32, 34 (1st Cir. 2019) (quoting *Stepanets*, 879 F.3d at 372).

Thompson separately contends that the indictment fails to specify whether Count Two is premised on photos and videos of minor children taken on airplanes, or instead on AI-generated child pornography. But the indictment refers specifically to "one and more images of . . . a prepubescent minor and a minor who had not attained 12 years of age." ECF 19, at 3. The relevant statute, in turn, defines "minor" as "any *person* under the age of eighteen years." 18 U.S.C. § 2256(1) (emphasis added). The indictment thus gives Thompson adequate notice that the images in question involve a real minor, not one generated by artificial intelligence. Indeed, settled case

6

law establishes that, in a prosecution for a child pornography offense, the government "must prove beyond a reasonable doubt that the image is of an actual child in order to establish guilt." *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 439 (1st Cir. 2007); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 250 (2002); *United States v. LaFortune*, 520 F.3d 50, 53-54 (1st Cir. 2008). And consistent with the indictment, the government asserts in opposing the motion to dismiss that Count Two is not based on any AI-generated images. ECF 51, at 7 n.4.

Thompson alternatively requests that, even if the indictment is sufficient, the government be ordered to produce a bill of particulars. Under Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). A motion for a bill of particulars should "be granted only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." *United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir. 1993). In determining whether to grant a request for a bill of particulars, courts can consider what the government has produced beyond the indictment itself. *See United States v. Nelson-Rodriguez*, 319 F.3d 12, 30-31 (1st Cir. 2003).

Thompson seeks a bill of particulars that provides specific factual allegations about which of his actions form the basis for the two charged offenses and what conduct occurred in Massachusetts. But, as explained, the indictment adequately apprises Thompson of the nature of the charges. He has also been able to review the criminal complaint and accompanying affidavit, the discovery provided, and the government's brief on this motion. In light of these materials, Thompson is "not lack[ing] a fair opportunity to prepare a defense absent a bill of particulars." *Id.* at 31. Given that more information is not "necessary to enable him to prepare his defense, to avoid

surprise at trial, [or] to protect against double jeopardy," Thompson's request for a bill of particulars is denied. *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir. 1989).

## II.     **Failure to State an Offense.**

Thompson next contends that the indictment fails to state an offense because, as a matter of law, surreptitious recordings of children using the toilet do not involve "sexually explicit conduct." The statute under which Thompson is charged in Count One provides, in relevant part, that "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e)." 18 U.S.C. § 2251(a). The statute under which Thompson is charged in Count Two criminalizes knowing possession of, or knowing access with intent to view, "child pornography." *Id.* § 2252A(a)(5)(B). "Child pornography" is, in turn, defined as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, . . . of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." *Id.* § 2256(8)(A). Both counts thus require the images or recordings at issue to depict "sexually explicit conduct."[1]

The term "sexually explicit conduct" is defined, in relevant part, as "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A)(v). The phrase "lascivious exhibition" is not itself defined by statute, but the First Circuit has described it as a "commonsensical term." *United States v. Charriez-Rolón*, 923 F.3d 45, 52 (1st Cir. 2019)

---

[1] Both counts also charge attempt under 18 U.S.C. § 2251(e) and 18 U.S.C. § 2252A(b)(2), respectively. "'To prove attempt, the government must establish both an intent to commit the substantive offense and a substantial step towards its commission.'" *United States v. Turner*, 501 F.3d 59, 68 (1st Cir. 2007) (quoting *United States v. Burgos*, 254 F.3d 8, 12 (1st Cir. 2001)).

8

(quotation marks omitted). Although "there is no exclusive list of factors . . . that must be met for an image (or a film) to be lascivious," the following factors, dubbed the "*Dost*-factors" based on the case that first enumerated them,[2] are generally relevant:

> (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her [or his] age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer.

*Id.* (quotation marks omitted). These factors are not, however, "comprehensive [o]r necessarily applicable in every situation." *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999). Not every factor must be present for a depiction to be lascivious, *see United States v. Frabizio*, 459 F.3d 80, 90 (1st Cir. 2006), and "there may be other factors that are equally if not more important," *Amirault*, 173 F.3d at 32. In all instances, the inquiry is case-specific.

Thompson's contention that the indictment fails to charge lascivious exhibition relies on the D.C. Circuit's decision in *United States v. Hillie*, 14 F.4th 677 (D.C. Cir. 2021). The Court in *Hillie* construed the statutory phrase "lascivious exhibition" against the backdrop of a string of Supreme Court decisions—*New York v. Ferber*, 458 U.S. 747 (1982), *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), and *United States v. Williams*, 553 U.S. 285 (2008)—involving First Amendment overbreadth and other challenges to statutes that regulate child pornography. *See Hillie*, 14 F.4th at 684-88. As the D.C. Circuit understood those decisions, to avoid an overbreadth problem, statutes criminalizing possession of images depicting "lascivious exhibition" must regulate only the "'the hard core of child pornography.'" *Id.* at 686 (quoting *Ferber*, 458 U.S. at

---

[2] *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987).

9

764-65). In accordance with that understanding, the majority opinion in *Hillie* construed the phrase "lascivious exhibition" to "cover visual depictions in which a minor, or someone interacting with a minor, engages in conduct displaying their anus, genitalia, or pubic area in a lustful manner that connotes the commission of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse." *Id.* at 687. And it determined that because the *Dost* factors did not align with its statutory construction, trial courts should not instruct the jury on the *Dost* factors as a matter of course, but that evidence pertaining to the *Dost* factors may be relevant and admissible at trial. *Id.* at 691-93. Applying its statutory construction, the *Hillie* majority then vacated convictions for sexual exploitation of a minor and possession of images of a minor engaging in sexually explicit conduct, where the defendant had secretly recorded videos of children using the toilet and undressing in a bedroom, with genitalia exposed, because the images did not depict "any sexual conduct whatsoever, or any activity connoting a sex act." *Id.* at 688-89, 692-95.

Thompson's reliance on *Hillie* to attack the indictment in this case falters for procedural and substantive reasons. Procedurally, his argument is premature. The First Circuit has held that "it is up to the *jury*" to determine whether a particular image or video depicts sexually explicit conduct, including lascivious exhibition. *Frabizio*, 459 F.3d at 85 (emphasis in original). In *Frabizio*, the Court reversed a judge's pretrial determination that three images did not depict "lascivious exhibition" of the genitals or pubic area. 459 F.3d at 83-91. The record presently before this Court—which does not contain the images and video recordings discovered in Thompson's iCloud account—is even more limited than the record before the trial judge in *Frabizio*. And even though the trial judge there had reviewed the images in dispute, the First Circuit emphasized that "whether a given depiction is lascivious is a question of fact for the jury." *Id.* at 85. Indeed, to the First Circuit's knowledge at the time, no court of appeals had "ever approved the use of the *Dost*

factors in a pretrial proceeding to remove the consideration of the lasciviousness of an image from the jury." *Id.* at 88. As in *Frabizio*, it will be for the jury to determine whether the government can meet its burden to prove beyond a reasonable doubt that the images and videos in Thompson's iCloud account involve lascivious exhibition.

Substantively, even if it were proper for the Court to consider at this juncture whether, as a matter of law, secretly recorded depictions of a child using the toilet can be lascivious, Thompson's reliance on *Hillie* runs up against First Circuit precedent. Recall that the majority in *Hillie* construed "lascivious exhibition" to require the display of genitalia "in a lustful manner that connotes the commission of sexual intercourse." 14 F.4th at 687. And even though the majority rejected the wholesale application of the *Dost* factors, it explained that "evidence pertaining to the fifth *Dost* factor, that the visual depiction suggests sexual coyness or a willingness to engage in sexual activity, may substantially overlap with the [statutory] construction" it had adopted. *Id.* at 692 (quotation marks and citation omitted). The dissenting opinion, in contrast, "emphatically disagree[d]" that "the statute *requires* the minor victim to exhibit a 'lustful manner.'" *Id.* at 702 (Henderson, J., dissenting) (emphasis in original). Such a construction, the dissent argued, undercuts Congress's aim to protect children from the psychological, emotional, and dignitary harms inflicted by sexual exploitation. *See id.*

The First Circuit, like the dissenting opinion in *Hillie*, does not read "lascivious exhibition" to require that the visual depiction involve the display of genitalia in a lustful manner or suggest sexual coyness or a willingness to engage in sexual activity. In *Frabizio*, the First Circuit rejected the proposition that the fifth *Dost* factor—whether the depiction of the minor suggests sexual coyness or a willingness to engage in sexual activity—was necessary to sustain a conviction involving lascivious exhibition. *See* 459 F.3d at 88-89. "The absence of a sexual come-on," the

11

First Circuit explained, "does not mean that an image is not lascivious." *Id.* at 89. *Frabizio*, like *Hillie*, engaged with the Supreme Court's reasoning in *Ferber* and *X-Citement Video*. *Id.* at 83-85. But *Frabizio* concluded that "'a sexually exploitative photograph of a child need not portray the victim in a pose that depicts lust, wantonness, sexual coyness or other inappropriate precocity.'" *Id.* at 89 (quoting *United States v. Wolf*, 890 F.2d 241, 247 (10th Cir. 1989)) (quotation marks omitted); *see also United States v. Goodman*, 971 F.3d 16, 18-19 (1st Cir. 2020) (concluding, on plain error review, that images depicting a child's genitalia while she entered and exited the shower supplied a sufficient factual foundation for the defendant's guilty plea under 18 U.S.C. § 2251(a) for sexual exploitation of a minor). Thus, the First Circuit's decision in *Frabizio* forecloses Thompson's argument that this Court should embrace *Hillie*'s statutory construction and hold, as a matter of law, that depictions of a child's genitalia while using the toilet cannot constitute "lascivious exhibition." Thompson's request that the indictment be dismissed for failure to state an offense is denied.

**III.   Venue.**

Thompson's final contention is that venue in the District of Massachusetts, the district in which the airplane landed, is improper. The parties agree, based on discovery provided by the government, that the airplane was flying over New Jersey airspace when Thompson escorted Minor A to the first-class bathroom and Minor A noticed the iPhone taped to the upturned lid of the toilet seat. Based on that discovery, Thompson argues that the venue clauses of Article III and the Sixth Amendment of the U.S. Constitution, as well as Federal Rule of Criminal Procedure 18, require any charges to be brought against him in the District of New Jersey, not the District of Massachusetts. The government maintains that its decision to bring charges in the District of Massachusetts, the landing jurisdiction, is consistent with the Constitution and Rule 18, and is

specifically authorized by 18 U.S.C. § 3237(a). The government bears the burden to prove, by a preponderance of the evidence, that venue is proper as to each count in the indictment. *See United States v. Salinas*, 373 F.3d 161, 163 (1st Cir. 2004).

    A.    <u>Constitutional Provisions.</u>

The Court begins with the question whether, in a case involving an alleged crime on a commercial aircraft, the Constitution requires the government to charge the defendant only in the district whose airspace bears the closest nexus to the conduct underlying the crime, rather than the district in which the airplane lands. The Constitution twice protects a criminal defendant's right to be tried in an appropriate venue. Article III, Section 2 provides that a criminal trial "shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. CONST. art. III, § 2, cl. 3. The Sixth Amendment further provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. CONST. amend. VI. Federal Rule of Criminal Procedure 18 echoes those rights, providing that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."

Thompson's argument that any charges against him must be brought in the flyover district, not the landing district, cannot be squared with the text, history, and purpose of these provisions. Construing the text of Article III and the Sixth Amendment, as well as English common law and Founding-era historical sources, the Supreme Court has long held that the Constitution does not

13

insist on only one district as the proper venue for a criminal trial. *See Palliser v. United States*, 136 U.S. 257, 265-66 (1890). In *Palliser v. United States*, the Supreme Court explained that:

> Where a crime is committed partly in one district and partly in another it must, in order to prevent an absolute failure of justice, be tried in either district, or in that one which the legislature may designate; and congress has accordingly provided that, "when any offense against the United States is begun in one judicial district and completed in any other, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein."

*Id.* at 266 (quoting Rev. Stat. § 731 (1878), 28 U.S.C. § 103 (1890) (now codified at 18 U.S.C. § 3237(a))). The Court has also recognized the constitutionality of a continuing violation theory, "where a crime consists of distinct parts which have different localities," or "where it may be said there is a continuously moving act, commencing with the offender and hence ultimately consummated through him, as the mailing of a letter; or where there is a confederation in purpose between two or more persons, its execution being by acts elsewhere, as in conspiracy." *United States v. Lombardo*, 241 U.S. 73, 77 (1916). In such circumstances, the defendant may be tried in any district in which part of the crime occurred. *Id.* at 78; *accord Salinas*, 373 F.3d at 164. The Constitution does not require that venue be set in only one district.

The text and Founding-era history of Article III and the Sixth Amendment have less to say about the context in which this case arises: involving a commercial aircraft, flying miles over Earth at a high speed while en route from one state to another. *See United States v. Lozoya*, 982 F.3d 648, 651 (9th Cir. 2020) (en banc) ("The Constitution does not discuss the airspace over the several states."). But the purpose of the constitutional provisions bears directly on Thompson's argument that the District of New Jersey is the constitutionally mandated venue. The Framers safeguarded venue rights in Article III and the Sixth Amendment in reaction to the colonial-era practice "permitt[ing] Americans, charged with a crime on colonial soil, to be moved to England or another

14

colony for trial." *United States v. Muhammad*, 502 F.3d 646, 651 (7th Cir. 2007) (citing D. Kershen, *Vicinage*, 29 OKLA. L. REV. 803, 805 (1976)); *see also United States v. Cabrales*, 524 U.S. 1, 6 (1998) (noting that the Founders' "complaints against the King of Great Britain, listed in the Declaration of Independence, included his transportation of colonists 'beyond Seas to be tried'"). They sought to "'secure the party accused from being dragged to a trial in some distant state, away from his friends, witnesses, and neighborhood.'" *Muhammad*, 502 F.3d at 652 (quoting J. Story, COMMENTARIES ON THE CONSTITUTION § 925 (Carolina Academic Press reprint 1987) (1833)); *accord Lozoya*, 982 F.3d at 651 (majority opinion); *id.* at 659 (Ikuta, J., dissenting in part and concurring in the judgment). Protection against trial in an arbitrary location—one lacking any connection to the defendant, witnesses, or victims of a crime—sits at the heart of the constitutional provisions and Rule 18.

Holding that these provisions require venue in this case to be set in the flyover District of New Jersey, and do not permit venue in the landing District of Massachusetts, would frustrate these aims. The conduct underlying the indictment took place on an airplane traveling from North Carolina to Massachusetts, and Thompson was first questioned by law enforcement officials in Massachusetts. Under the circumstances, the defendant, victims, and witnesses are more likely to have a connection to the departure and landing States than the State over which the airplane happened to be traveling when the crimes allegedly occurred. New Jersey has no apparent connection to Thompson, Minor A, any of the other alleged victims, or the witnesses to the case. The rule Thompson urges—that venue in the flyover district is required by the Constitution and Rule 18—would undermine, rather than support, the protections he invokes. *See Lozoya*, 982 F.3d at 652.

The Court thus concludes that the Constitution does not require venue in this case to be set in the District of New Jersey.[3] The constitutional command that the trial "shall be held in the State where the said Crimes shall have been committed" is broad enough to encompass the landing jurisdiction when a crime is committed on a commercial aircraft. U.S. CONST. art. III, § 2, cl. 3; *see also* U.S. CONST. amend. VI (trial in the "district wherein the crime shall have been committed"). The government's choice to bring charges in the District of Massachusetts, the landing district, is compatible with Article III, the Sixth Amendment, and Rule 18 of the Federal Rules of Criminal Procedure.

B.     Statutory Provisions.

The question remains whether venue in the District of Massachusetts is permissible under the relevant venue statutes. The statutes Thompson is charged with violating—18 U.S.C. §§ 2251(a) and (e) and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2)—do not have their own venue provisions. Venue for the prosecution must therefore be determined "'from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Seward*, 967 F.3d 57, 60 (1st Cir. 2020) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)); *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). The parties point to different statutes that, they say, set the proper venue: the government contends that the second paragraph of 18 U.S.C. § 3237(a) applies, while Thompson argues that 18 U.S.C. § 3238 applies.

The statute Thompson relies on, section 3238, provides, in relevant part, that "[t]he trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first

---

[3] In so holding, the Court does not conclude that venue in the District of New Jersey would be constitutionally impermissible. It holds only that venue in the District of New Jersey is not constitutionally required.

16

brought." 18 U.S.C. § 3238. Under section 3238, Thompson contends, he cannot be tried in the District of Massachusetts because he was not first arrested in this district. But by its plain terms, section 3238 applies only to trials for "offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district." *Id.* The statute does not apply to crimes committed within the borders of, and by extension in the airspace above, the States and United States. *See United States v. Ghanem*, 993 F.3d 1113, 1119 (9th Cir. 2021) ("[F]or crimes committed *outside the country*, the Constitution vests Congress with the power to determine the venue for trial. U.S. CONST. art. III, § 2, cl. 3. In turn, Congress has determined that the trial for such a crime 'shall be in the district in which the offender . . . is arrested or is first brought.'") (emphasis added) (quoting 18 U.S.C. § 3238)). Section 3238 functions instead to implement the portion of Article III, Section 2 providing that when offenses are "not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed." U.S. CONST. art. III, § 2, cl. 3; *see Reid v. Covert*, 354 U.S. 1, 7-8 & n.9 (1957) (citing section 3238 in explaining that "[f]rom the very first Congress, federal statutes have implemented the provisio[n]" of Article III, Section 2 covering offenses "not committed within any State").

Section 3237(a), in contrast, authorizes venue in the District of Massachusetts. It provides that "[a]ny offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." 18 U.S.C. § 3237(a). Three Courts of Appeals have concluded that this provision "applies to in-flight crimes because the crimes took place on a form of transportation in interstate commerce." *Lozoya*, 982 F.3d at 653 (quotation marks omitted); *accord United States v. Cope*,

17

676 F.3d 1219, 1225 (10th Cir. 2012); *United States v. Breitweiser*, 357 F.3d 1249, 1253 (11th Cir. 2004). The Court agrees with the analyses in these cases. Thompson's alleged crimes "involv[e]" transportation in interstate commerce because the indictment is premised on conduct that took place on a form of transportation, an aircraft, that moved in interstate commerce. 18 U.S.C. § 3237(a). Moreover, the conduct in this case relates to that transportation. By virtue of his employment as a flight attendant on a commercial airline, Thompson had the means and allegedly used his position of authority (1) to "emplo[y], us[e], persuad[e], induc[e], entic[e], or coerc[e]" Minor A to use a bathroom in a different part of the aircraft before seeking to make a sexually explicit recording of her with his iPhone camera, *id.* § 2251(a), and (2) to possess or attempt to possess sexually explicit images and videos of children using airplane bathrooms, *id.* § 2252A(a)(5)(B); *cf. Cameron*, 699 F.3d at 636 (transporting and receiving child pornography via the internet are continuing offenses under the second paragraph of § 3237(a)). But for the interstate transportation, the conduct that underlies the charges against Thompson could not have occurred. *See Lozoya*, 982 F.3d at 653.[4]

Because the charged offenses in this case involve transportation in interstate commerce, the offenses "may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves," including the landing district. 18 U.S.C. § 3237(a). The Court thus concludes the venue is proper in the District of Massachusetts for both offenses.[5]

---

[4] Thompson contends that the second paragraph in section 3237(a) should be construed as a subset of the first paragraph in section 3237(a), which involves "any offense against the United States begun in one district and completed in another, or committed in more than one district." But there is no indication in the text, structure, or legislative history of section 3237(a) that Congress intended to make the second paragraph a subset of, or limited by, the first, and the Court is aware of no case that so holds. *See Lozoya*, 982 F.3d at 652 ("18 U.S.C. § 3237(a) contains two paragraphs, each covering a different type of offense.").

[5] Because the Court concludes that venue in the District of Massachusetts is proper for both counts of the indictment under the second paragraph of 18 U.S.C. § 3237(a), it need not reach the

## CONCLUSION AND ORDER

For the foregoing reasons, Thompson's motion to dismiss the indictment, ECF 48, is DENIED.

SO ORDERED.

Dated: December 18, 2024

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

---

government's alternative argument that venue is proper for Count Two on a constructive possession theory.