UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,    )
                            )
                            )          Criminal Action
        Plaintiff,      )          No. 24-10107-JEK
                            )
v.                         )
                            )
ESTES CARTER THOMPSON, III,  )
                            )
        Defendant.      )
                            )

BEFORE THE HONORABLE JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

SENTENCING

July 23, 2025
2:13 p.m.

John J. Moakley United States Courthouse
Courtroom No. 17
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RPR, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

APPEARANCES:

On Behalf of the Government:

Elianna J. Nuzum
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3100
elianna.nuzum@usdoj.gov


On Behalf of the Defendant:

Scott Lauer
Federal Public Defender Office
51 Sleeper Street
5th Floor
Boston, MA 02210
617-223-8061
scott_lauer@fd.org

P R O C E E D I N G S

(The following proceedings were held in open court

before the Honorable Julia E. Kobick, United States

District Judge, United States District Court, District of

Massachusetts, at the John J. Moakley United States Courthouse,

One Courthouse Way, Courtroom 17, Boston, Massachusetts, on

July 23, 2025.)

(Case called to order.)

CLERK:  Would counsel introduce themselves, starting

with the government.

MS. NUZUM:  Good afternoon, Your Honor.  Elianna Nuzum

for the United States.

THE COURT:  Good afternoon, Ms. Nuzum.

MR. LAUER:  Scott Lauer on behalf of Mr. Thompson.

THE COURT:  Good afternoon, Mr. Lauer.  Good afternoon

to you as well, Mr. Thompson.

THE DEFENDANT:  Good afternoon, Your Honor.

THE COURT:  From probation?

U.S. PROBATION:  Chrystal Monteiro from Probation.

Good afternoon, Your Honor.

THE COURT:  Good afternoon, Ms. Monteiro.

Okay.  We're here for Mr. Thompson's sentencing.  And

before we begin, I understand we have a Zoom link set up that

is accessible by the victims and also Mr. Thompson's parents.

I just wanted to confirm that both sides are aware of that and

1  agree to that procedure.  Ms. Nuzum?

2          MS. NUZUM:  Yes, Your Honor.  And I did also want to

3  acknowledge there is a victim present in the courtroom.

4          THE COURT:  Thank you.

5          MR. LAUER:  Yes, there's an agreement as to that.

6          THE COURT:  Okay.  Thank you.  I'd like to just begin

7  by reviewing the materials I have received from the parties to

8  make sure I haven't missed anything.

9          I have the Presentence Report dated July 16, 2025.  I

02:33 10  have the defendant's sentencing memorandum filed on July 17.

11  That included a letter from Mr. Thompson's parents, a letter

12  from Glenn Marshall, a letter from Reverend Annette Gord of the

13  Clarksville Presbyterian Church, a letter from Jennifer Brock

14  who is a family friend, a letter from Dorothy Holmes which is

15  also a family friend, and a psychological report from Leo

16  Keating.  I have the government's sentencing memorandum which

17  was filed on July 16, two victim impacts statements, the

18  government's motion for a preliminary order of forfeiture, and

19  a recommendation from the Probation Office.

02:34 20          Counsel, is there anything else that I should have

21  received, Ms. Nuzum?

22          MS. NUZUM:  Not for the government.

23          THE COURT:  Mr. Lauer?

24          MR. LAUER:  No, Your Honor.

25          THE COURT:  Okay.  All right.  Ms. Monteiro, has any

information been withheld from the Presentence Report pursuant
to Rule 32(d)(3)?

U.S. PROBATION:  No, Your Honor.

THE COURT:  All right.  Mr. Lauer, have you had the
chance to review the Presentence Report?

MR. LAUER:  I have, Your Honor.

THE COURT:  And have you gone over it with your
client?

MR. LAUER:  Yes, Your Honor.

THE COURT:  All right.  Mr. Thompson, I'm going to ask
you as well, have you had a chance to review the Presentence
Report?

THE DEFENDANT:  Yes, I have, Your Honor.

THE COURT:  Okay.  And have you had a chance to
discuss it with your attorney?

THE DEFENDANT:  Yes, I have, Your Honor.

THE COURT:  Okay.  Is there anything in there that you
think is incorrect?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Okay.  So I noted that there are no
objections to the factual content in the Presentence Report, so
I will accept all the factual statements in the Presentence
Report.

I noted that there were no objections to the
guidelines calculation in the Presentence Report which differed

1  slightly from the guideline calculation in the plea agreement

2  and that counsel anticipated addressing that at the hearing, so

3  I'll hear either side if you'd like to say anything about that.

4  MS. NUZUM:  Yes, Your Honor.

5  So the parties noticed that as well.  We had just

6  erred in our calculation of the grouping, but both parties

7  agree that Probation's calculation is correct.

8  The plea agreement provides in paragraph 11 that the

9  parties can modify it, and we would, the parties would like to

02:35 10  do that to reflect the GSR as calculated by Probation.  So it

11  would just be amending paragraph four with the guidelines

12  calculation agreeing that the total offense level is 42.

13  THE COURT:  All right.  So the government agrees to

14  that.  Mr. Lauer, defense does as well?

15  MR. LAUER:  Yes, that's by agreement.

16  THE COURT:  Okay.  So I'll treat that as an agreement

17  by the parties to modify the plea agreement.  Thank you.

18  Okay.  Then with that, no further objections to the

19  guidelines calculation, I'll accept the guideline calculation

02:36 20  as set forth in the Presentence Report.  I'm going run through

21  those.  And because of the grouping, they are somewhat lengthy,

22  but listen carefully.

23  So Counts One and Two are grouped together for

24  guidelines calculation purposes because they involve the same

25  victim and the same act or transaction.  Under U.S. Sentencing

Guideline 2G2.1(d), because Mr. Thompson's conviction involved exploitation of more that one minor, there are five separate groups for guideline purposes. So for groups one and group four, which involve Minor A and Minor D, Mr. Thompson's base offense level is 32, and he receives a two-level increase because the minors were older than 12 but younger than 16. That yields an adjusted offense level of 34.

For group two, group three and group five, which involve Minor B, Minor C and Minor E, Mr. Thompson's base offense level is 32, and he receives a four-level increase because the minors were younger than 12, and that yields an adjusted offense level of 36.

There are five units calculated, one for each group. I add four offense levels to the highest level, which is 36, which yields a combined adjusted offense level of 40. Mr. Thompson receives a five-level enhancement under 4B1.5, and he receives a three-level decrease for acceptance of responsibility, which brings his total offense level to 42. He has a criminal history score of zero, so he's in Criminal History Category I. His advisory guideline range is 360 to 600 months in prison. Supervised release range is five years to life. The fine range is $50,000 to $250,000. There is a $200 mandatory special assessment. And Mr. Thompson must pay at least $3,000 in restitution per victim.

Any objections to that calculation, counsel?

1          MS. NUZUM:  No.

2          MR. LAUER:  No, Your Honor.

3          THE COURT:  All right.  So what I'd like to do is I'll

4     start with Ms. Nuzum and hear the government's recommendation

5     for sentencing, then I'll turn to Mr. Lauer.

6          MS. NUZUM:  Thank you, Your Honor.  As I noted at the

7     beginning of the hearing, I did want to acknowledge the fact

8     that there are victims participating both in the courtroom and

9     as well as online.  Two of the families submitted a written

02:39 10     victim impact statement, and nobody is a planning to address

11     the court live today.

12          THE COURT:  Okay.

13          MS. NUZUM:  So the government is asking for a sentence

14     of 20 years in prison, five years of supervised release, the

15     $200 mandatory special assessment, as well as the forfeiture

16     listed in the plea agreement.  There's no doubt it's a very

17     significant sentence here.  It's also a very significant

18     downward variance from the guideline sentencing range.

19          The significant sentence is necessary for punishment

02:39 20     in this case to deter this defendant and others like him and to

21     incapacitate him from causing any further harm in light of the

22     extremely predatory conduct in this case.  The defendant

23     hand-selected the children that he was supposed to be taking

24     care of onboard these flights.  He targeted them.  He

25     interacted with them, and he directed them into a bathroom that

he had made into a secret recording studio.  As the families write in their impact statements, he did so while their parents were nearby, unsuspecting and unaware.

His actions were incredibly calculated.  In the incident we know the most about, Minor A's incident, in September of 2023, he went in the bathroom right before the child went in and he went in right after to set up and to clean up.  And nobody would have known what he did but for her quick thinking, her quick wits really beyond her age.

It's important to keep in mind that the conduct this sentence is meant to capture includes five separate instances of this sort of behavior, five separate instances of sexual exploitation of children as young as six and as old as 14 years old, as well as the possession of associated images of child pornography, which included these modified videos, these still shots that he created.

So again, this is five separate dates, five separate children, occurring weeks or months apart over about an eight-month period.  When looked at this way, I know the federal guidelines don't work this way, but if you just divide it out, it's about four years for each child.  When you look at it that way, it seems almost insufficient.  So the 20 years for the five children really is, in the government's view, the lowest sentence that will achieve the goals of sentencing.

The sentence of 20 years gives the youngest victim who

was six at the time to grow up and not have to look over her

shoulder all the time in fear that the defendant could be

there.  And I do note that Judge Sorokin, in a similar -- in a

case involving child sexual exploitation gave a 25-year

sentence citing that sort of logic.  In that case the victim

was a toddler, and he wanted to give that child the opportunity

to grow up and not have to worry about this individual being

out there.

The government notes that often there are factors in a

defendant's past that help to explain in some way what they

did, not to excuse it ever.  In this case that doesn't seem to

be the case.  He had a really good childhood.  He had the

support of his family.  He had friends.  He had a good

education.  He had good employment.  He had lots of

opportunities.  So it doesn't really make sense, despite all

those advantages, he did this.

And the two factors that he points to, alcoholism and

depression, really just don't make a person into a child

predator.  Given his admitted and longstanding sexual interest

in children, which his own psychosexual evaluation indicates

extends to children as young as six, the government is

concerned about the safety of children and believes this

20-year sentence as well as the five years of supervised

release is necessary to protect children from this defendant.

The psychosexual evaluation really doesn't provide

1   comfort that he is not a risk of for re-offending.  I know

2   that's a conclusion that Keating opines with treatment he would

3   be at low risk of re-offending, but as the government notes in

4   its memo, that evaluation didn't acknowledge the fact that this

5   happened on five different occasions.  And just as a matter of

6   common sense, it does seem to -- one would conclude that

7   somebody who did this five separate times, five separate

8   instances across many months, is more likely to re-offend here

9   and he has re-offended numerous times.

02:43 10      The government notes that the sentence it's

11  recommending is roughly in line with similar crimes.  It's very

12  hard in this context.  Every case is so fact-specific as to the

13  conduct, as to what the victim needs, as to what the

14  defendant's individual characteristics are, so it's very hard

15  to compare between cases.  But the government did point out two

16  comparators.  The *Bennett* case in which a stepfather made

17  surreptitious recordings of his two preteen and teen

18  stepdaughters in their home and then shared those with others

19  on the internet.  He was sentenced to 20 years.

02:44 20      In some ways it's similar in that it's a surreptitious

21  recording.  It wasn't sexual behavior per se in the way that

22  people colloquially think of it.  In some ways it was a little

23  bit different in that there was distribution.  There was two

24  victims instead of five.  But again, a rough comparator.

25      And then there's the *Alcevedo* case.  This was a man

who did have a prior conviction, so that's different.  He

convinced a minor in a different state to masturbate nude for

him over video chat.  He was sentenced to 22 years.  That case

did not have distribution.  It only had one victim.  It was

sexual conduct, but it was not sexual abuse, again in the

colloquial sense.  So again, those are the rough comparators

the government found.

Likewise, the cases the defendant cites the government

believes can be distinguished.  In most of those cases it was

fewer victims, one to two victims.  Again, the conduct is

different.  If the court wishes to review the sentencing memos

in those cases, you can read about what exactly the conduct

was.  Again, it was sexual in nature, and in some of those

cases the sentences were slightly higher, such as in the *Cyr*

case where it was 25 years.

The *Thai* case, the government did distinguish in its

memo that was a surreptitious recording in a bathroom.  In that

case there were particular concerns about victims needing to

testify.  The government, in connection with the plea

agreement, agreed to dismiss the sexual exploitation case.  The

guidelines were much lower, and the defendant ultimately

received 12 years.  And I note the victims in that case was

older, between 12 and 17.  There were four that were

identified.  There were some specific factors to the

defendant's history and characteristics there that don't apply

1    here, and the defendant was significantly younger.

2         So on balance, Your Honor, this case is deeply

3    concerning.  The defendant's behavior was predatory,

4    calculated, and repeated, and the government believes that to

5    adequately punish him, to deter him and others, to provide for

6    the needs of the victims, the government asks that the court

7    sentence the defendant to 20 years in prison as well as five

8    years of supervised release with the conditions recommended by

9    Probation, the $200 special assessment, and the forfeiture.

02:46  10         THE COURT:  Can I briefly ask you about restitution.

11    Is the government's position that, because I understand none of

12    the victims have requested restitution, that 3,000 per victim

13    is appropriate?

14         MS. NUZUM:  Your Honor, the victims did not request

15    restitution.  In my experience, courts have typically required

16    some sort of documentation that there have been those sorts of

17    damages suffered prior to ordering restitution, so the

18    government was not seeking it in this case.

19         THE COURT:  Okay.  Thank you.  Mr. Lauer.

02:47  20         MR. LAUER:  Yes, Your Honor.  Thank you.  There's

21    obviously a constellation of things that the court must

22    consider here, and the government rightfully points out that

23    the facts and the circumstances of the offense are foremost

24    among them.  And the facts and circumstances of this offense

25    are extremely concerning.  I'm certainly not going to minimize

1   the nature of the conduct here.  Mr. Thompson does not minimize

2   the nature of the conduct here.

3       What he did was wrong.  He has acknowledged that.  He

4   has pled guilty.  He has spared the victims the need to testify

5   and the trauma that flows from there.  He also will be reading

6   a statement that's more personal, talking about what he did and

7   how remorseful he is.

8       So it's entirely appropriate for the court to look at

9   these facts and say that what took place here is completely

02:48 10  unacceptable and caused real harm to young people and it should

11  not have happened.  By the same token, the court is also

12  required to consider Mr. Thompson and his personal

13  characteristics and his, in particular, amenability to

14  rehabilitation.

15      And when viewed from that lens, the case takes on a

16  different light, I would suggest.  Mr. Thompson is someone who,

17  fortunately, did have a relatively normal childhood.  He was

18  raised in the south and his parents still live there.  He was

19  raised going to church.  He graduated high school.  He played

02:49 20  sports.  He went to college.  All seemingly normal things.

21      But along the way, there were some problems and some

22  troubles that started to pop up for him, and they were troubles

23  that he never fully appreciated, took seriously or did anything

24  about.  Specifically I'm referring to his use of alcohol.  I'm

25  specifically referring to his mental health, and I'm

1  specifically referring to the use of pornography and, in

2  particular, sexual interest in children.

3       This case did not occur in a vacuum.  It occurred with

4  Mr. Thompson drinking to excess, deeply depressed, unable to

5  confide in anyone, and not understanding this problem that he

6  had.  That doesn't excuse what he did.  In no way does it

7  excuse what he did, but it should inform the court as the court

8  thinks about what sentence is sufficient but not greater than

9  necessary to accomplish the goals of sentencing here.

02:50 10       We are fortunate in this case.  Unlike many 2251

11  cases, this is not a sexual abuse case.  This is not a case

12  where Mr. Thompson ever put his hands on anyone.  This is a

13  case of voyeurism, and it's still extremely disturbing, and it

14  doesn't mean that the victims weren't harmed.  They certainly

15  were, and we've read the victim impact statements.  There's no

16  question that what he did was damaging.

17       But the court can also juxtapose what he did with

18  other sentences in cases of this type, which often do involve

19  hands-on, physical sexual abuse.  Likewise, other cases of this

02:50 20  type often involve distribution where the images or the videos

21  are distributed to others on the internet, and there's a

22  concern that now they're out there, they're in the wild.  They

23  could be found by anyone.  That is emphatically not the case

24  here.  The government -- there's a footnote in the government's

25  brief that acknowledges this.  There is no evidence that

Mr. Thompson ever distributed a single thing.

So while the facts are extremely concerning, those aggravating factors are not present here.  And when you look at Mr. Thompson and when you look at the fact that he is a first-time offender, he has never had any trouble with the law, he's never had any treatment, he has never -- he's had alcohol related treatment.  In fact, once this incident took place and the case was being investigated he did seek out alcohol treatment.  Since he's been in pretrial detention he did actually participate in the sex offender education class.  I have a certificate today.  I just received it from him this morning.  The programming that is available at the Wyatt Detention Center is limited, but he availed himself of the program that they offer.

Everything about his history, history of law abiding behavior, good student, strong family support suggests that this is someone who is going to take rehabilitation seriously, who is going to do what he has to do it to live his life lawfully in the future.

Certainly there's a need for punishment.  Certainly there's a need to promote respect for the law.  Certainly there's a need to protect the public.  15 years in prison will accomplish that.  15 years in prison for someone who has never been behind bars before is a significant sentence.  We are asking the court to adopt that sentence, also with the

1  knowledge that when he is released he will be subject to

2  significant and onerous supervision.

3        The proposed conditions by Probation of course

4  incorporate restrictions on his ability to have contact with

5  minors.  They include internet monitoring, a whole host of

6  restrictions that are in fact designed to promote public safety

7  and make sure that when he is in the community there's no

8  further problems.  So it's not simply an all or nothing.  The

9  court has to either incarcerate him to protect the public and

02:53 10  there's no other remedial measure.  The conditions that are

11  proposed by Probation are all there for a reason, and we agree

12  that they're appropriate.

13        We agree that he needs sex offender treatment.  We

14  agree that he can't be drinking.  We agree that he needs to

15  take his mental health more seriously in the future.  And

16  there's good reason to believe, I would suggest, that with

17  those services in place that his risk for recidivism is low.

18  That is the conclusion that was reached by Leo Keating who does

19  have particular expertise who in fact works for an organization

02:54 20  that often contracts with the probation office to provide sex

21  offender specific treatment.

22        So for those reasons, Your Honor, we are asking the

23  court to sentence him to 15 years.  We are also asking the

24  court for a judicial recommendation that he serve his sentence

25  at FMC Butner, which is one of the few federal facilities that

does offer sex offender treatment, and it also has the benefit
of being in North Carolina, close to Mr. Thompson's family who
are elderly and not able to travel easily.

So with that, Your Honor, I'll turn the floor over to
my client, assuming that the court is prepared to hear his
statement.

THE COURT: Yes. Thank you, Mr. Laurer.
Mr. Thompson.

THE DEFENDANT: Thank you, Your Honor.

Your Honor, I want to start by saying that there is
not a day that goes by that I have not deeply regretted my
actions. My actions were selfish, perverse and wrong. I made
terrible choices, and because of them I deeply hurt the victims
as well as their families. For that I am truly sorry. I also
know that the word "sorry" is not enough and never will be.

To the victims, I know that I may not fully grasp the
extent of the damage I may have caused you. I also know that I
may not understand how you truly feel and what I have put you
through. To the victims and their families, please know that I
am focused and dedicated to changing my ways. I need and want
to be rehabilitated.

I do not want to be this way anymore. I never want to
hurt anyone ever again. Please know that all of my time spent
incarcerated will be dedicated to learning the skills I need to
change so that this never happens again. I do not want to be a

danger to society. I have never wanted to be this way. In the

past I had opportunities to seek professional help, but I chose

not to. And now it is too late, and I have done great harm as

a result. I must ensure that that never happens again. I want

to change. I must change. I just want to one day lead a

normal life, free from destructive, disturbed thinking that

leads to deplorable, unconscionable actions. I know my time in

prison is my opportunity to change, and I will take advantage

of every avenue available for treatment and rehabilitation.

Your Honor, if given the chance, I know I can be a

safe productive member of society and lead a normal life. Your

Honor, with your final decision today, I look forward to the

opportunity for treatment and lasting change that does lie

before me. I want the chance to prove to the victims, to their

families, to you, Your Honor, and to society that I can be

rehabilitated, that I can reform, that I can redeem myself and

do good in my life once and for all. Thank you, Your Honor.

THE COURT: Thank you, Mr. Thompson.

Okay. What I'd like to do is take a brief recess for

five or ten minutes. I appreciate counsel's arguments and

Mr. Thompson's statement. I'll come back on the bench at that

point and pronounce sentence. Thank you.

(Recess, 2:56 p.m. - 3:07 p.m.)

THE COURT: Thank you, counsel. So before I turn to

pronounce your sentence, I want to just briefly ask the parties

1     about restitution.  And as I understand the statute here, it

2     does seem to require restitution but in the amount of $3,000

3     per identified victim, which we have in this case.

4            And I guess I will just turn to the parties.  I

5     understood that the plea agreement gave it to the court decide

6     an amount for restitution that's appropriate.  I understand

7     that none of the victims have specifically requested it here,

8     but I just wanted to confirm that that's your understanding of

9     the statute, that $3,000 per victim is the minimum required by

03:08 10    law here for these offenses.

11           MS. NUZUM:  Your Honor, this is how I read the

12    statute.  I do know in these cases historically in this

13    courthouse the judges have required some level of documentation

14    supporting that there has been that amount before they award

15    it, so it hasn't always happened.  That being said, if that's

16    the court's reading of the statute, certainly we don't have an

17    objection to that.

18           THE COURT:  Mr. Lauer.

19           MR. LAUER:  I think that the statute could be fairly

03:08 20    interpreted as requiring the court to impose at least $3,000

21    restitution where restitution is demanded.  If there is no

22    demand for restitution, then there's no basis to order it.  So

23    that would be how I would urge the court to read the statute,

24    at least in a way that's consistent with the prior practice,

25    which is that, in the absence of a demand, there's no basis for

1  restitution.

2  THE COURT:  So I don't see the word "demand" in the

3  statute.  I'm looking at 2259(b)(2), which says, "If the

4  defendant was convicted of trafficking in child pornography,

5  the court shall order restitution under this section in an

6  amount to be determined by the court as follows."  Then it

7  lists things to be considered, but I don't see the word

8  "demand" in the statute.

9  MR. LAUER:  No, but certainly the concept of

03:09 10  restitution is to make a victim whole.

11  THE COURT:  Yes.

12  MR. LAUER:  And it would seem completely arbitrary to

13  impose restitution where there's no demand for it and no basis

14  for the loss.

15  THE COURT:  Which is why I'm asking you about, you

16  know, I think the statute establishes a presumption that where

17  a defendant is convicted of certain offenses, there's at least

18  a 3,000-dollar restitution payment required.  And then if

19  there's a demand made, you know, the victims might be entitled

03:10 20  to more if there's evidence of the loss.

21  MR. LAUER:  Well, under the plea agreement,

22  Mr. Thompson has agreed to restitution in an amount to be

23  determined by the court.  I think, you know, our position is

24  that in the absence of a request for restitution, it's not

25  appropriate to award it, but if the court reads the statute

1  differently, then so be it.

2  THE COURT:  Okay.  All right.  I just wanted to give

3  both sides the chance to address that because that is how I

4  read the statute.  And I understand there may be different

5  practices in other cases, but I don't think, unless counsel

6  disagrees, it makes sense to set a further restitution hearing

7  where demands have not been made prior to the sentencing

8  hearing, but as I read the statute, I think I'm being directed

9  by Congress to impose at least $3,000 restitution per victim.

03:11 10  And, you know, I'll hear counsel if you'd like to set a further

11  hearing or if you'd like to brief this, but that's what I plan

12  to do, unless you requested another hearing.

13  MR. LAUER:  I would -- I think it may be a benefit to

14  have the opportunity to brief the issue, so I would ask the

15  court to defer the question of restitution, schedule a hearing

16  with a date for the parties to submit briefs on the legal

17  question of the court's authority to order it in the absence of

18  any request.  And that way I think both the government and I

19  could have an opportunity to address that question more

03:11 20  specifically than we did in our sentencing submissions.

21  THE COURT:  Okay.  Ms. Nuzum, any objection to that?

22  MS. NUZUM:  No objection to that, Your Honor.  I think

23  just to effectuate that we would also need to modify the plea

24  agreement in paragraph 5G to say "Restitution in an amount to

25  be determined," I believe 90 days is the maximum allowed for a

restitution hearing.  So just, if we would agree to modify that

to an amount to be determined within 90 days after sentencing

and then we can it do further briefing.

THE COURT:  Do you agree with that, Mr. Lauer?

MR. LAUER:  Yes.

THE COURT:  So I will withhold making any decisions on

restitution today.  We'll set a briefing schedule for this

issue and then schedule a restitution hearing for sometime well

before 90 days from this hearing.

Okay.  I want to start by, as I said, thanking counsel

for their arguments and, Mr. Thompson, you for your statement

to the court.  I want to thank the victim and her family who

are here today and anyone, all the victims who are

participating over the Zoom link and all who were affected by

this case.  I know it's been profoundly difficult for many

people, and your participation here is really important, so I

really appreciate you being here.

Mr. Thompson, as you know, there's a plea agreement in

this case that the parties have reached.  The parties have

jointly recommended to the court that I impose a sentence on

you somewhere between 180 and 240 months in prison.  That is

between 15 and 20 years in prison.  You probably recall when

you appeared to change your plea to guilty that I accepted your

guilty plea but said I needed to wait to review the Presentence

Report and hear from the attorneys in this case and hear from

you before I determined whether to accept the plea agreement.

I also needed to consider all of the factors that Congress has directed me to consider that are set forth in 18, United States Code, Section 3553(a). I have considered all of those factors, and I'll just describe them to you.

So I need to consider here the nature and circumstances of the crime you committed, your own history and your personal characteristics, the need for the sentence that I impose today to reflect the seriousness of the offense, to promote respect for the law, to deter you from committing crime in the future and to deter others from committing similar crimes as well. And I need to make sure that the sentence I impose avoids disparities between you and similarly situated defendants that aren't warranted. So I've considered all of those factors, and I want to start by talking about your personal circumstances.

As Mr. Lauer said, you were raised with a loving family in a stable middle-class home, and he said you had a normal childhood. You had everything you needed as a child. You did well in school. You went to church. You enjoyed community service. You played sports, and you had a supportive network of friends and family friends, some of whom have written letters to support you today. I read those letters, and they describe you as a friendly child, easygoing, generous.

After high school you went to college. You graduated

from East Carolina University and found a job as a flight
attendant and stayed in that job from 2011 to 2024.  But I
know, as Mr. Lauer described and as you described, you've also
struggled with alcohol abuse in your adult life.  You have
shown good judgment in obtaining treatment for alcohol abuse,
and I'm heartened to hear that you intend to do that again.
And you were sober I understand for a period of three years
from 2017 to 2020.  You've also experienced anxiety and
depression as well.  And all of those conditions are
unquestionably challenging for anyone to deal with, but
especially I think in light of your stable childhood and steady
employment and loving family, one just has to wonder what led
you to commit such appalling crimes that you stand convicted of
here.  And they were I think really appalling.  Working as a
flight attendant, you created a scheme to single out passengers
on the flights, and these were children, to create videos of
the most private parts of their bodies for sexual
gratification.

When people purchase airline tickets, they never
imagine that the people who they trust with their own safety,
that's the flight attendants, would in fact be the one to cause
them immense harm.  And you took advantage of the trust placed
in you by families on the flights to steer innocent children
into airplane bathrooms where you had set up a secret recording
device to videotape them as they went to the bathroom.

1    This conduct was purposeful and it required advance

2 planning and some deceit.  You had to surreptitiously set up

3 your phone in the bathroom and in your hidden location.  You

4 then had to select your victim and steer that victim to the

5 bathroom.  After the victim left the bathroom, you, at least in

6 the case of Minor A, jumped in front of other passengers who

7 were waiting to use the bathroom to retrieve your phone, and

8 once you were caught, you took steps to conceal your conduct

9 and delete the videos.

03:18 10    The videos that you created were child pornography.

11 And then once you obtained the videos, you stored them and

12 edited them, zoomed in on some parts of them, converted others

13 to slow-mo.  And this conduct was consistent with other conduct

14 that was described in the Presentence Report where you used

15 artificial intelligence programs to generate images of other

16 children being sexually abused.

17    I think everyone agrees this wasn't an isolated lapse

18 in judgment.  There were five victims in this case.  The

19 conduct happened over the course of eight months on different

03:18 20 flights.  And it's inflicted an immense harm on the children

21 and their families.  The victim impact statements I thought

22 were very eloquent and speak to this, and they're really

23 heartbreaking to read.  The victims and their families in this

24 case have endured really severe trauma.

25    The victims here are children.  They were once

cheerful, upbeat children, and now they feel distrustful of strangers and unsafe in public. Their innocence has been lost, and the idea of traveling in public spaces or even using public restrooms provokes a lot of anxiety and distress now for these young people because they were victimized in a public space while traveling with their families.

The trauma has affected the families, too. Minor A's family described this in their statement. They said they had to relearn what safety looks like, how to show affection, how to talk to one another without walking on emotional glass. "Depression and anxiety have touched each of us since that flight and the emotional toll relentless, the scars permanent." So the ripple effects of your conduct undertaken for sexual gratification have spread far and wide.

I think the conduct in this case and other cases like this stems in part from not really seeing people as people, people who are entitled to the full measure of dignity that we all should enjoy as we walk through the world. It comes from I think treating people as objects for sexual gratification rather than fully-fledged human beings. We all need to remember that each of the victims in this case was someone's daughter, someone's sister. They all have their own friends and their own interests and their own opinions and their own goals in life. And like all of us, they should be entitled to feel safe and secure when they walk through the world.

         1          Your attorney, Mr. Lauer, said that you feel real

         2    remorse for your conduct, and you're someone with prospects for

         3    rehabilitation.  And I did hear that remorse in your statement

         4    to the court.  I appreciated how you acknowledged the harms

         5    that you've caused and apologized to the victims and intend to

         6    use your time in prison to reflect on what led you to take the

         7    actions that you took in this case and never again do the same

         8    kind of conduct.  You'll have a long time in prison to reflect

         9    on that, and I think it's a good first step that you were able

03:21   10    to express those thoughts today and also accept responsibility

        11    for your crimes by pleading guilty.

        12          So I've considered all these things and the need for

        13    the sentence today to, as I said, reflect the seriousness of

        14    the crimes here and promote respect for the law.  So in light

        15    of all of those objectives, I am going to accept the plea

        16    agreement that you've entered into, Mr. Thompson, with the

        17    government.  I think it is sufficient but not greater than

        18    necessary to comply with the purposes of sentencing.

        19          Pursuant to that agreement, I'm going to sentence you

03:22   20    to 18 and a half years in prison, which is 222 months in

        21    prison, plus five years of supervised release.

        22          I come to that determination because, on the one hand,

        23    as I've said, I think the crimes here were really egregious,

        24    and it's important to deter again you from committing crime in

        25    the future or others from committing similar crimes and reflect

1  the seriousness of the conduct.

2         I've also considered the data that is in the

3  Presentence Report that similarly situated offenders typically

4  receive much longer sentences and even the high end of what the

5  parties have agreed to in the plea agreement.  But on the other

6  hand, I'm not going to sentence you to the highest, 20 years in

7  prison, in recognition of your acceptance of responsibility and

8  your remorse and your prospects for rehabilitation.

9         I am heartened that you already obtained treatment

03:23 10  while you were at Wyatt and that you intend to keep pursuing

11  treatment while serving your sentence.  It's also in

12  recognition of the fact that, while the conduct here was really

13  egregious, it did not involve hands-on conduct or distribution,

14  so I do think that 18 and a half years is sufficient to meet

15  the goals of sentencing.

16         Before I formally impose sentence, I want to just take

17  a moment to recognize the courage of all of the victims in this

18  case and their families and especially Minor A.  The reason

19  that Mr. Thompson's conduct was uncovered was because Minor A

03:24 20  had the presence of mind to notice that something was not right

21  in that airplane bathroom and to document it and to tell her

22  parents about it.  And then Minor A's parents had the presence

23  of mind to stand up for their daughter and tell the relevant

24  authorities about what had happened.  Both of those actions

25  took immense courage.

1       By standing up and saying something is not right here,

2   something is wrong, I think Minor A and her family stopped a

3   pattern of exploitation that might have affected other

4   children.  And all of the victims and their families in this

5   case have demonstrated courage by continuing to support each

6   other in moving forward, continuing to live their lives despite

7   what was done to them.  That harm does not define you.  And by

8   continuing to support your family members and living the life

9   you want to live, you demonstrate real strength of character

03:25 10   and courage, so I want to just express my appreciation for the

11   victims and all the courage they've shown here.

12       Before I formally impose sentence, counsel, is there

13   anything further that you'd like to raise that we have not

14   already addressed?

15       MS. NUZUM:  No, Your Honor.  I would just ask that the

16   order of forfeiture be entered and pronounced in conjunction

17   with sentencing as well.

18       THE COURT:  I was going to defer -- sorry, the order

19   of forfeiture, yes, right.

03:25 20       MS. NUZUM:  Thank you.

21       THE COURT:  All right.  Mr. Lauer, anything further?

22       MR. LAUER:  Nothing further.

23       THE COURT:  All right.

24       So Mr. Thompson, I'd ask you to please stand.

25   Pursuant to the Sentencing Reform Act of 1984 and having

considered the sentencing factors enumerated in 18, United

States Code, Section 3553(a), it is the judgment of the court

that the defendant, Estes Carter Thompson, III, is hereby

sentenced -- excuse me -- committed to the custody of the

Bureau of Prisons to be imprisoned for a term of 222 months.

This term consists of 222 months on each count to be served

concurrently.

The court makes the judicial recommendation that the

defendant serve his sentence at FMC Butner in North Carolina.

The court makes a further judicial recommendation that the

defendant participate in substance abuse treatment while in the

Bureau of Prisons's custody, and the court makes a judicial

recommendation that the defendant be sentenced to an

institution commensurate with security where he can participate

in sex offender treatment.

Upon release from imprisonment, the defendant shall be

placed on supervised release for a term of five years.  This

term consists of five years on each count, such terms to run

concurrently.

Within 72 hours of release from custody of the Bureau

of Prisons, the defendant shall report in person to the

district to which he is released.  No fine is imposed, as the

defendant does not have the financial ability to pay a fine.

While under the Probation Office's supervision, the

defendant shall comply with the following terms and conditions:

1    You must not commit another federal, state or local

2  crime.  You must not unlawfully possess a controlled substance.

3  You must refrain from any unlawful use of a controlled

4  substance.  You must submit to one drug test within 15 days

5  from release from imprisonment and at least two periodic drug

6  tests thereafter, not to exceed 104 tests per year.

7    You must cooperate with the collection of DNA as

8  directed by a probation officer.  You must comply with the

9  requirements of the Sex Offender Registration and Notification

03:28 10  Act as directed by the probation officer, the Bureau of

11  Prisons, or any state sex offender registration agency in the

12  location where you reside, work, are a student or were

13  convicted of a qualifying offense.

14    You shall comply with the standard conditions that

15  have been adopted by this court and which are described at

16  United States Sentencing Guideline 5D1.3(c) and will be set

17  forth in detail on the judgment.

18    You're prohibited from consuming alcoholic beverages.

19  You must submit to substance abuse testing not to exceed 104

03:28 20  tests per year to determine if you have used a prohibited

21  substance.  You must not attempt to obstruct or tamper with the

22  testing methods.  You must pay the balance of any fine or

23  restitution imposed according to a court-ordered repayment

24  schedule.  You're prohibited from incurring new credit charges

25  or opening additional lines of credit without the approval of

the Probation Office while any financial obligations remain
outstanding.

You must provide the Probation Office access to any
requested information, financial information, which may be
shared with the Asset Recovery Unit of the United States
Attorney's Office.

Pursuant to the Adam Walsh Child Protection and Safety
Act of 2006, you shall register as a sex offender not later
than three business days from release.  You will keep the
registration current in each jurisdiction where you reside, are
employed or are a student.  You must not -- excuse me -- you
must, not later than three business days after each change in
name, residence, employment or student status, appear in person
in at least one jurisdiction in which you are registered and
inform that jurisdiction of all changes in the information.
Failure to do so may not only be a violation of this condition
but also a new federal offense punishable by up to ten years
imprisonment.

In addition, you must read and sign the offender
notice and acknowledgement of duty to register as a sex
offender per the Adam Walsh Child Protection and Safety Act of
2006 form.

You must participate in a sexual-specific evaluation
or sex offender-specific treatment conducted by a sex offender
treatment provider as directed and approved by the Probation

1    Office.  The treatment provider shall be trained and

2    experienced in the treatment of sexual deviancy and follow the

3    guideline practices established by the Association for the

4    Treatment of Sexual Abusers.  The sexual-specific evaluation

5    may include psychological or physiological testing, which may

6    include polygraph testing and the visual reaction time

7    assessment.

8          You must disclose all previous sex offender or mental

9    health evaluations to the treatment provider.  You must submit

03:31 10   to periodic polygraph testing as a means to ensure that you are

11   in compliance with the requirements of your supervision or

12   treatment program.  When you submit to polygraph testing, you

13   do not waive your Fifth Amendment rights and your exercise of

14   such rights will not give rise to a violation proceeding.  The

15   results of the polygraph examinations may not be used as

16   evidence in court to prove that a violation of community

17   supervision has occurred but may be considered in a hearing to

18   modify release conditions and/or could initiate a separate

19   investigation.

03:31 20         You must allow the installation of computer/internet

21   monitoring software on approved internet capable devices but

22   may still use a computer for work purposes that's been

23   previously been approved by the Probation Office.  The programs

24   used will be designed to identify for the Probation Office the

25   viewing, downloading, uploading, transmitting or otherwise

using any images or content of a sexual or otherwise

inappropriate nature.  You must not attempt to remove or

otherwise defeat such systems and must allow the Probation

Officer to examine such computer and receive data from it at

any reasonable time.  You must advise anyone using the

monitored internet capable devices that those devices are being

monitored by the Probation Office.

You must not possess or use any computer or internet

capable device without prior approval from the Probation

Office.  Any such device should not be used to knowingly access

or view sexually explicit materials as defined in 18, United

States Code Section, 2256(2)(A).

You must disclose all account information relative to

internet access, social networking and email, including user

names and passwords to the Probation Office.  You must also, if

requested, provide a list of all software or hardware on your

computer as well as telephone, cable or internet service

provider billing records and any other information deemed

necessary by the Probation Office to monitor computer usage.

You must provide the probation officer with access to

any requested financial information for purposes of monitoring

compliance with the imposed computer access or monitoring

conditions, including but not limited to credit card bills,

telephone bills and cable or satellite or television bills.

You must not knowingly have direct contact or contact through a

third party any children under the age of 18 unless previously

approved by the Probation Office or in the presence of a

responsible adult who has been approved by the Probation Office

and who is aware of the nature of your background and current

offenses.

You must not knowingly have any contact with the

victims without prior approval of the Probation Office.  This

includes letters, communication devices, audio or visual

devices, visits, social networking sites or third parties not

covered by any other condition.

You must consent to third-party disclosure to any

employer or potential employer concerning any computer-related

restrictions that are imposed on you unless excused by the

probation officer.  You're prohibited from being employed in

any capacity that may cause you to come into direct contact

with children, except under circumstances approved in advance

by the supervising probation officer.

In addition, you must not participate in any volunteer

activity that may cause you to come into contact with children,

except under circumstances approved in advance by the probation

officer.  "Contact" is defined as any transaction occurring

face to face, over the telephone, via mail, over the internet

and in any third-party communication.

Prior to accepting any form of employment, you must

seek the approval of the Probation Office in order to allow the

1    Probation Office the opportunity to assess the level of risk to

2    the community you may pose if employed in a particular

3    capacity.  You shall be required to contribute to the costs of

4    evaluation, treatment, programming and/or monitoring based on

5    the ability to pay or availability of third-party payment.

6         It's further ordered that you shall pay to the United

7    States a special assessment of $200, which shall be due

8    immediately.  As the defendant is indigent.  No JVTA or AVAA

9    assessments are imposed.

03:35 10      You can be seated, Mr. Thompson.  Mr. Thompson,

11   criminal defendants ordinarily have the right to appeal

12   sentences that are imposed on them, but by entering into a plea

13   agreement, you agreed not to take any appeal of your sentence

14   or your conviction to a higher court, and you further agreed

15   not to challenge any orders relating to forfeiture,

16   restitution, fines or supervised release.

17        The plea agreement sets forth two limited exceptions.

18   You retained the right to appeal if you later wish to claim

19   that your attorney provided you with ineffective assistance of

03:36 20   counsel or if you wish to claim that the government engaged in

21   misconduct serious enough to warrant overturning your

22   conviction.  If you with to take such an appeal and if you're

23   unable to pay the costs of the appeal, you can ask permission

24   to have those costs waived and appeal without paying.  You must

25   file any such notice of appeal within 14 days after the entry

of judgment.  And if you request, the clerk can immediately

prepare and file a notice of appeal on your behalf.

Do you understand those rights?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  I believe I, in pronouncing

sentence, did not grant the government's motion for a

preliminary order of forfeiture.  So I will now grant the

United States' motion for a preliminary order of forfeiture.

The court finds that the United States has established the

requisite nexus between the property and the offenses of which

Mr. Thompson has been convicted.

As I said at the outset, I'm going to defer any ruling

on restitution until after the parties have had an opportunity

to brief that issue.  We'll set a briefing schedule after this

hearing and then set a further hearing to discuss that issue.

Okay.  Counsel, is there anything further that you'd

like to raise, Ms. Nuzum?

MS. NUZUM:  Your Honor, can we just agree to waive the

defendant's appearance at the restitution hearing?

THE COURT:  If he agrees with that.

MR. LAUER:  That's fine, there's no objection.

THE COURT:  Okay.  All right.  The defendant's

appearance can be waived at the restitution hearing.

Anything further, Mr. Lauer?

MR. LAUER:  No, Your Honor.  Thank you.

1        THE COURT:  All right.  Mr. Thompson, I'll remand you

2    to the custody of the U.S. Marshal, and I'll wish you good luck

3    in the future.

4        THE DEFENDANT:  Thank you, Your Honor.

5        THE COURT:  We'll stand in recess.

6        (Adjourned, 3:38 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Kelly Mortellite, Registered Professional

4   Reporter, Registered Merit Reporter and Certified Realtime

5   Reporter, in and for the United States District Court for the

6   District of Massachusetts, do hereby certify that the foregoing

7   transcript is a true and correct transcript of the

8   stenographically reported proceedings held in the

9   above-entitled matter to the best of my skill and ability.

10                  Dated this 5th day of August, 2025.

11

12              /s/ Kelly Mortellite

13              _____

14              Kelly Mortellite, RPR, RMR, CRR

15              Official Court Reporter

16

17

18

19

20

21

22

23

24

25